JEROME A. BLATE AND ROSE BLATE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72589. Filed April 29, 1960.

*Ben M. Dreyer, Esq.*, for the petitioners.
*L. Robert Leisner, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The question for decision is whether the monthly payments to Janet are "periodic payments * * * in discharge of * * * a legal obligation which, because of the marital or family relationship, is * * * incurred by the husband * * * under a written instrument incident to * * * divorce or separation." Sec. 71(a)(1), I.R.C. 1954. If so, they are deductible by petitioner by reason of the companion provisions in section 215.[1]

The payments in question were clearly "periodic" insofar as they were payable monthly, would extend over a period of more than 10 years,[2] and were subject to contingencies including the death of either spouse or the beginning of payments to Janet from the proceeds of her father's life insurance policies. It is equally clear that the written separation agreement of April 20, 1953, under which petitioner incurred a legal obligation to make the payments, was "incident" to the divorce granted Janet on April 23, 1953.

The decisive issue, then, with respect to proper characterization of the payments, is whether they were incurred by petitioner "because of the marital or family relationship," or whether, as contended by respondent, they were incurred solely as consideration for the items of property which Janet conveyed to petitioner. Several factors point to the former conclusion.

The negotiations of the parties preliminary to execution of the separation agreement do not indicate that petitioner intended to

---

[1] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[2] See:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. * * *

purchase these assets from Janet, or that Janet expected payment therefor. To the contrary, Janet's own testimony on direct examination by respondent shows that her willingness to convey the property was motivated primarily by nonmonetary considerations. In addition to her obvious desire to obtain petitioner's consent to separation and divorce, Janet wanted to preserve the family "heritage" of the Erlanger business for the children whom she expected would enter the business some day. She recognized her own lack of business ability and was persuaded that the business would best be protected for the children if her stock were controlled by petitioner in whom custody of the children was to be vested, and on whom Janet was accustomed to rely in the handling of family business affairs. It does not appear from the record that Janet ever demanded payment for the conveyance of her interests in the lessee corporations, or that the monthly payments in question were discussed in connection with Janet's agreement to transfer these interests.

Moreover, the express terms of the separation agreement support the view that the monthly payments were intended to provide for Janet's "support and maintenance." This phrase is used in the preamble to describe a distinct objective of the parties in entering into the separation agreement, the other objectives being "the disposition of property and the settlement of marital rights relating thereto," and provision for "the care and custody of their three minor children." The paragraph of the agreement providing for the monthly payments to Janet expressly states that such payments are "for her maintenance and support," without reference to the settlement of property rights. And the support objective is further recognized by petitioner's agreements to pay "additional reasonable amounts" for extraordinary medical and dental services thereafter rendered to Janet, and to provide for continuation of the monthly payments "for a reasonable period of time" after his death. Another consideration in this regard is Janet's agreement not to ask for "counsel fees or any alimony in the event of an action for divorce, expressly acknowledging that the sums paid and agreed to be paid to her in this agreement shall be *in full satisfaction* of all such claims and demands." (Emphasis supplied.) Cf. *Ann Hairston Ryker*, 33 T.C. 924.

Respondent concedes that Janet had "an undoubted right to alimony or support payments," but contends that "she was willing to forego" this right in order to obtain a divorce. This contention is directly contrary to the above-quoted language of the agreement. Janet did not "forego" her right to alimony but received "full satisfaction" thereof by the monthly payments provided for in the separation agreement.

Nor do we see any basis for respondent's contention that the agreement was drafted pursuant to petitioner's instructions "so as to give the impression" that the payments were intended for Janet's support. The facts show that the agreement was drafted by an independent attorney upon whose selection both petitioner and Janet agreed, and that the terms of the agreement were dictated by the attorney in the presence of both parties after a private conference with each. There is no proof that the attorney was unfairly influenced by petitioner to the prejudice of Janet, or that the agreement did not accurately reflect the intentions of the parties.

According to the terms of the separation agreement, the monthly payments were to cease on the death of Florence Erlanger Blate, when Janet's contingent interest in the proceeds of her father's life insurance would become vested. Respondent has shown that the life expectancy of Florence Erlanger Blate was 19.6 years as of April 20, 1953, and that the payments of $433 per month, if continued for 19.6 years, would amount to approximately $101,920. From the fact that the figure of $101,920 corresponds approximately to the value of the assets transferred to petitioner ($104,994), respondent asks us to infer that the monthly payments "were based on an actuarial determination as to the value" of those assets. We think this inference is unjustified. The record is barren of any proof that the parties, or their attorney, made the actuarial determination to which respondent refers. The agreement itself does not fix the value of the assets transferred, and there is no indication that the parties considered the obligation to make monthly payments as the value equivalent of those assets. Cf. *John Sidney Thompson*, 22 T.C. 275; *Campbell* v. *P. G. Lake*, 220 F. 2d 341 (C.A. 5). In this respect, the present case is analogous to *Thomas E. Hogg*, 13 T.C. 361, where, as stated in *John Sidney Thompson, supra* at 282, "there was no calculation of the amount of property to which the wife might be entitled and * * * such amount was not a factor in arriving at the settlement terms." Had such a calculation been made in the present case, we would have expected Janet to have referred to it in her testimony, but she did not.

The most reasonable inference from the terms of the agreement is that the parties intended to provide for Janet's support until such time as she began receiving the payments from the proceeds of her father's life insurance. Respondent states on brief that Janet "was not concerned with alimony or support" because she was possessed of independent means and was planning to marry Edwards immediately after her divorce from petitioner. The evidence, however, is to the contrary. Janet's income from dividends and interest on her stock and notes ceased upon her conveyance thereof to petitioner, as

did her income from director's fees. During 1954 and 1955, her only income consisted of the $80 per month which she received on her interest income certificate and the monthly payments which she received from petitioner. There was some testimony that at the time of trial, September 21, 1959, Janet was being "subsidized" by a trust fund established by her mother; but the amount of this subsidization, or the date when the trust fund was established, is not disclosed in the record. No trust income was reported by Janet and Edwards on their joint returns for 1954 and 1955. It also appears that Edwards was not a reliable source of support. The gross income reported by Janet and Edwards on their aforementioned joint returns was $5,952.21 in 1954 and $6,216.87 in 1955, inclusive of the $5,196 which they reported as "alimony" in each of those years.

For these reasons, we think the payments in question were incurred by petitioner "because of the marital or family relationship" in recognition of his general obligation to provide for Janet's support; therefore, they constituted alimony within the purview of section 71. Petitioner correctly deducted these payments pursuant to section 215.

*Decision will be entered under Rule 50.*