WALTER H. WEINER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LOIS F. WEINER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6200–70SC, 6255–70.   Filed November 1, 1973.

*David N. Ellenhorn*, for the petitioner in docket No. 6200–70SC.
*Alvin Miller*, for the petitioner in docket No. 6255–70.
*Russell F. Kurdys*, for the respondent.

STERRETT, *Judge:* The Commissioner determined deficiencies in the petitioners' Federal income taxes as follows:

| Taxpayer | Year | Amoun |
|---|---|---|
| Walter H. Weiner | 1965 | $934. 15 |
| Lois F. Weiner | 1965 | 525. 89 |
| Lois F. Weiner | 1966 | 595. 22 |

The sole issue for our determination is whether certain installment payments made by Walter H. Weiner to Lois F. Weiner, pursuant to their separation agreement, constituted alimony, thereby making such payments includable in Lois' gross income under the provisions of section 71(a), I.R.C. 1954,[1] and deductible to Walter under section 215.

These cases have been consolidated for trial, briefing, and opinion.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise specified.

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

The petitioner in docket No. 6200–70SC is Walter H. Weiner (hereinafter Walter), who resided at the time of the filing of the petition herein at New York, N.Y. Walter filed his Federal income tax return for the calendar year 1965 with the district director of internal revenue at Albany, N.Y.

The petitioner in docket No. 6255–70 is Lois F. Weiner (hereinafter Lois) residing at the time of the filing of her petition at New York, N.Y. Her Federal income tax returns for the calendar years 1965 and 1966 were filed with the district director of internal revenue at New York, N.Y.

Walter and Lois were married on September 7, 1952, in Fort Wayne, Ind. Throughout their marriage Lois was hospitalized for substantial periods of time due to mental illness. In order to meet the large expenses incurred because of her illness, Lois' family gave the couple frequent and substantial gifts of money and stock during the course of their marriage. The medical expenses were met in part by funds advanced to Lois from a family trust administered by the Lincoln National Bank & Trust Co. of Fort Wayne, Ind.

In 1958 Walter and Lois decided to purchase a large house for themselves and their two children. This decision was based primarily on the opinions of Lois' doctors indicating that continued apartment dwelling in New York City might seriously impair her mental health.

Since Walter lacked the funds to purchase a large house, he asked his mother-in-law to provide such funds as necessary and she readily agreed. To accomplish this, the mother-in-law arranged a transfer from the family trust to Lois of stock of the Lincoln National Life Insurance Co., then valued at approximately $29,500.

Although Walter was prepared to execute a note to the family trust in return for the stock, Lois actually signed a note which required payment within 90 days of demand. There was never any intention to repay the loan. The transfer was in fact an advance against any inheritance Lois would receive if she survived her mother.

Lois and Walter purchased a house costing $37,500. Of the $29,500 received from the sale of stock, $25,000 was used as a downpayment, with the remainder being used for moving and other similar expenses. Title to the house was placed in the joint names of Walter and Lois.

Walter and Lois entered into a separation agreement on March 3, 1965. As part of the agreement Walter retained custody of the two

children and possession of, and title to, the house. Further, the separation agreement provided as follows:

3. (a) The Husband and the Wife recognize that, having regard for the financial circumstances of the parties and the financial requirements imposed on the Husband in view of the custody arrangements hereinafter set forth, the Wife will require $200 a month from the Husband for her support and maintenance, and that upon the death of Clara Field, mother of the Wife, the Wife expects an inheritance (outright or in trust) from her mother which will help enable her to support and maintain herself. Husband and Wife agree, however, that supplementary payments over a period of several years shall be made by the Husband to the Wife in order to help defray the relatively substantial disbursements which the Wife may make in paying certain extraordinary current expenses and in establishing a residence separate from that of the Husband and the Children. In contemplation of the foregoing (but whether or not such an inheritance shall be received from the mother of the Wife), the Husband has agreed to make, and the Wife has agreed to accept, in full satisfaction of her rights during her life to support and maintenance from the Husband, the following periodic payments:

(i) $200 on the first day of each month commencing March 1, 1965, and ending on the first day of the month in which the Wife shall either die or remarry, whichever shall first occur;

(ii) $400 on the first day of each month commencing March 1, 1965, and terminating on the first day of the month in which total payments to the Wife pursuant to this subparagraph (ii) equal or exceed $29,000, *provided, however*, that if, for any reason, the income of the Husband shall diminish from his income during 1964 from the practice of law, or the financial requirements of the Children would be impaired by making such additional payments in the amount of $400, the Husband may, at his option, reduce such additional payment to an amount not less than $200 a month, in which case additional payments to the Wife pursuant to this suparagraph (ii) shall continue until the first day of the month in which total payments to the Wife pursuant to this subparagraph (ii) equal or exceed $29,000.

(b) Anything in this Agreement to the contrary notwithstanding, the obligations of the Husband to make the payments provided in Section 3(a) of this Agreement shall not extend beyond the lifetime of the Wife.

In March of 1965 Walter and Lois were divorced and their separation agreement was incorporated in the divorce decree.

While negotiating the separation agreement, Lois was represented by Alvin Miller, counsel representing her in the instant case. Miller alerted Lois to the fact that she might be taxable on the repayment ·of the $29,000 as the agreement was written. At the time of the negotiations, Lois was a voluntary patient at a hospital in New York. Lois felt that she had to accept the agreement as it stood in order to get a divorce.

During 1965, Walter paid $6,000 to Lois which he deducted as alimony payments on his 1965 Federal income tax return. Lois reported $2,000 as income from alimony payments on her 1965 Federal income tax return.

During 1966, Walter made payments of $4,800 to Lois which he deducted as alimony.[2] Lois reported $2,400 as income from alimony on her 1966 return.

### OPINION

The question for decision is whether certain payments made by Walter to Lois constituted alimony within the meaning of section 71(a)(1),[3] thereby making such payments includable in her gross income under section 71(a) and providing him with a corresponding deduction under the provisions of section 215.[4]

Walter contends that the payments in issue, those made pursuant to clause 3(a)(ii) of the separation agreement and described therein as "supplementary payments * * * to help defray the relatively substantial disbursements which the Wife may make in paying certain extraordinary current expenses and in establishing a residence separate from that of the Husband and the Children," were "in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband," within the meaning of section 71(a)(1). Lois argues in effect, however, that these payments were compensation for her property rights and were not therefore within the purview of section 71(a)(1).

At this juncture Walter prays that we look no further than the parties' separation agreement, which classifies all payments received as "in full satisfaction of her rights during her life to support and maintenance from the Husband." Nevertheless, it is clear that payments which are attributable to property which "originally belonged to the wife" are not income within the meaning of section 71(a)(1). Sec. 1.71–1(c)(4), Income Tax Regs.[5] Further, the labels attached to

---

[2] No deficiency was asserted against Walter for 1966 since even without deduction of the payments in issue Walter would incur no tax liability.

[3] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[4] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

[5] Sec. 1.71–1(c)(4). Section 71(a)(1) or (2) does not apply to that part of any periodic payment attributable to that portion of any interest in property transferred in discharge of the husband's obligation under the decree or instrument incident to the divorce status or legal separation status, or transferred pursuant to the written separation agreement, which interest originally belonged to the wife. It will apply, however, if she received such interest from her husband in contemplation of or as an incident to the divorce or separation without adequate and full consideration in money or money's worth, other than the release of the husband or his property from marital obligations. * * *

payments made in connection with divorces or separations are not controlling. *Mills* v. *Commissioner*, 442 F. 2d 1149, 1151 (C.A. 10, 1971), affirming 54 T.C. 608 (1970) ; *Taylor* v. *Campbell*, 335 F. 2d 841, 845 (C.A. 5, 1964); *Enid P. Mirsky*, 56 T.C. 664, 675 (1971) ; *Edith M. Gerlach*, 55 T.C. 156, 169 (1970). It is the intent of the parties that is controlling. *Phinney* v. *Mauk*, 411 F. 2d 1196 (C.A. 5, 1969).

After having closely reviewed the evidence in the instant case, we are convinced that the payments made by Walter pursuant to clause 3(a)(ii) of the separation agreement constituted compensation for Lois' property rights. There is little dispute that the $29,500 "loaned" by Lois' mother was an advancement against any inheritance she might have received. Because Lois gave up a valuable future right, we feel that the $29,500 represented equity furnished by Lois which was used to purchase the parties' home. In terms of logic, we do not attribute the payments of $400 per month until attainment of $29,000 to coincidence, but rather a definite attempt to pay Lois for her property rights in the home kept by Walter. *Riddell* v. *Guggenheim*, 281 F. 2d 836 (C.A. 9, 1960) ; *Lewis B. Jackson, Jr.*, 54 T.C. 125 (1970). Lois' property rights are clearer to us than those established by virtue of community property laws since she actually supplied the money to purchase the home. In this respect see, for example, *O'Brien, Sr.* v. *United States*, 439 F. 2d 1201 (C.A. 5, 1971) ; *Grant R. Bishop*, 55 T.C. 720 (1971) ; *John H. Schacht*, 47 T.C. 552 (1967). Moreover, the fact that Walter was obligated to pay a sum certain, $29,000, is indicative of a property settlement even though payments would cease on Lois' death. *Riddell* v. *Guggenheim, supra; Campbell* v. *Lake*, 220 F. 2d 341 (C.A. 5, 1955).

Walter argues that the payments of $400 per month were intended to supplement Lois' regular alimony while she might need medical treatment. We disagree. The testimony indicated that throughout the marriage, Lois' family had taken care of most of her medical expenses in addition to providing the couple with many generous gifts. We have not been told of any reason why Lois' family would not continue to assist her. Indeed, Lois needed little medical care after the couple was divorced.

Walter also claims that Lois was fully apprised of the tax consequences of the separation agreement when she signed it. Nevertheless we are guided by the language of *Edith M. Gerlach, supra* at 169, where this Court, in denying the applicability of the parol evidence rule of *Commissioner* v. *Danielson*, 378 F. 2d 771 (C.A. 3, 1967), and the strong proof rule of *J. Leonard Schmitz*, 51 T.C. 306 (1968),[6] to

---

[6] See also *Ullman* v. *Commissioner*, 264 F. 2d 305 (C.A. 2, 1959), affirming 29 T.C. 129 (1957), relied upon by Walter.

divorce cases, stated, "The factual situation in those cases [*Danielson* and *Schmitz*] is so different from the factual situation surrounding the entry of a decree of divorce by a judge of a court, that we do not consider those cases to control the determination of the instant case." In the present case, Lois was a patient in a mental hospital, desperately desiring a divorce, and advised similarly by her doctors. Under these circumstances we have been willing to look beyond the language of the agreement to determine the true nature of the payments. Based on all the evidence, we find that the separation agreement, in reality, provided for payment to Lois for her equity in the house, which recompense she had demanded throughout the divorce negotiations.

We therefore hold that the payments made by Walter pursuant to clause 3(a)(ii) of their separation agreement, were in the nature of a property settlement rather than alimony paid "in discharge of * * * a legal obligation" which was imposed upon Walter as a result of the marital or family relationship. The payments accordingly are not includable in the gross income of Lois and are consequently not deductible to Walter.

> *Decision will be entered for respondent in docket No. 6200–70SC.*
>
> *Decision will be entered for petitioner in docket No. 6255–70.*