HAROLD E. GRAHAM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MARY JO GRAHAM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Graham v. Commissioner
Docket Nos. 12159-79, 17530-80.
United States Tax Court
T.C. Memo 1981-692; 1981 Tax Ct. Memo LEXIS 52; 43 T.C.M. (CCH) 15; T.C.M. (RIA) 81692; December 3, 1981. Richard Z. Kabaker, for the petitioner in docket No. 12159-79. Daniel T. Hardy, for the petitioner in docket No. 17530-80. Make D. Petersen, for the respondent. EKMAN
MEMORANDUM *53 OPINION EKMAN, Judge: Respondent determined a deficiency of $ 996.00 in petitioner Harold E. Graham's Federal income tax for 1976. Respondent also determined a deficiency of $ 2,397.00 in petitioner Mary Jo Graham's Federal income tax for 1976. The cases were consolidated for trial. Due to concessions by the parties, the sole issues remaining for decision are: (1) whether $ 500 monthly payments made by petitioner Harold E. Graham to petitioner Mary Jo Graham are in the nature of support or alimony deductible to Harold and taxable to Mary Jo within the meaning of sections 71 and 215, I.R.C. 1954; (2) whether, in computing Harold's gain from the sale of his residence, his basis in a one-half interest in property transferred to him from Mary Jo by quitclaim deed was equal to the fair market value of that one-half interest at the time Mary Jo made the transfer; and (3) whether Mary Jo was liable for a note on which the property was pledged as collateral, and thus realized income when Harold assumed sole liability for the note. All of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by this reference. The *54 pertinent facts are summarized below. Petitioner Harold E. Graham (Harold) was a resident of Charlotte, North Carolina at the time his petition herein was filed. For the taxable year 1976, Harold timely filed Form 1040 as an unmarried head of household. Petitioner Mary Jo Graham (Mary Jo) was a resident of Wilmington, Delaware at the time her petition herein was filed. For the taxable year 1976, Mary Jo timely filed her individual Form 1040. Harold and Mary Jo were divorced April 26, 1976 by judicial decree. The court incorporated into its judgment a divorce settlement stipulation submitted to it by Harold and Mary Jo. They had agreed upon the stipulation after engaging in protracted negotiations by letter. Pursuant to the stipulation, Harold paid to Mary Jo $ 15,000 cash and assumed liability for all amounts owed on their Wisconsin residence. In return, Mary Jo transferred to Harold by quitclaim deed her joint tenancy interest in the home. The stipulation also provided that Harold would monthly pay to Mary Jo $ 600 as alimony, and $ 500 as part of a "full, complete and final division of the estate." In 1979, Harold made a motion to the Dane County Circuit Court for *55 an order to have the $ 500 monthly payments termed "maintenance." The Court denied his motion. 1. Alimony or Property Settlement. Section 71(a) includes in a wife's gross income periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is imposed on the husband by a divorce decree. Section 215 generally allows a husband to deduct payments made to his wife which are includible in the wife's gross income under section 71. Both respondent and Mary Jo agree that the $ 1,100 payments she received monthly from Harold are periodic and are imposed or incurred under a divorce decree or written instrument incident to the divorce within the meaning of section 71. However, they contend that $ 500 of the $ 1,100 payments is part of a property settlement, and thus is the equivalent of a return of capital to Mary Jo which is neither includible in her gross income nor deductible from Harold's gross income. Thompson v. Commissioner, 50 T.C. 522 (1968). Harold disagrees. He argues that the payments are in the nature of support or alimony, imposed "because of the family or marital relationship" and are thus deductible *56 by him pursuant to section 71. See section 1.71-1(b)(4), Income Tax Regs.; Warnack v. Commissioner, 71 T.C. 541 (1979). The character of the $ 500 payments is a question to be resolved in light of the surrounding facts and circumstances. Wright v. Commissioner, 62 T.C. 377 (1974), affd. 543 F.2d 593 (7th Cir. 1976); Phinney v. Mauk, 411 F.2d 1196 (5th Cir. 1969); Ryker v. Commissioner, 33 T.C. 924 (1960). An important factor to be considered is the intent of the parties. Porter v. Commissioner, 388 F.2d 670 (6th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court. However, it should be noted that the label given to the payments by the parties, the decree, or the State law does not govern their characterization for tax purposes. Joslin v. Commissioner, 52 T.C. 231, 236 (1969), affd. 424 F.2d 1223 (7th Cir. 1970); Taylor v. Campbell, 335 F.2d 841 (5th Cir. 1964). The form of the payments at issue and the respective property interests of the parties are also significant factors. Schottenstein v. Commissioner, 75 T.C. 451 (1980). *57 See also Wright v. Commissioner, supra; Weiner v. Commissioner, 61 T.C. 155 (1973); Hesses v. Commissioner, 60 T.C. 685 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975). In this case, the intent of the parties and the form of the $ 500 payments give us little guidance as to how the payments should be characterized. While petitioners appear to have intended the payments to be in the nature of support, [1] the record is ambiguous and any conclusion which might be reached from this evidence would be entirely inferential. Moreover, the form of the payments looks as much like alimony as it does like a property settlement. [2] Therefore, we must examine carefully the respective property interests of petitioners at the time of the divorce to resolve the character of the $ 500 monthly payments. *58 For the payments in issue to be a property settlement, Mary Jo must have had rights in property which she relinquished in exchange for the payments. Schottenstein v. Commissioner, supra; Hesse v. Commissioner, supra. The stipulation and divorce decree imply that Mary Jo had such property rights. They state the she was to receive the $ 500 payments as part of the "division of the estate" and for "property settlement." Moreover, the divorce court refused to relabel the so-called property settlement payments as "maintenance payments" on Harold's motion because the language of those documents was plain, whether or not Mary Jo and Harold actually intended the payments to be for support. Howver, these documents and the denial of Harold's motion did not interpret Wisconsin law, but merely labelled the payments as property settlement; the labels given to the payments by the parties or the decree do not govern their characterization for tax purposes. Joslin v. Commissioner, supra; Taylor v. Campbell, supra.Thus, we must look to Wisconsin law to find what rights are involved in a divorce "property settlement. *59 " Mary Jo asserts that the property settlement nature of the payments she received was established by Wis. Stat. sec. 247.26 (1976). We disagree. Under that section, a division of the estate and a transfer between the parties of title to separately owned properties is within the discretion of the divorce court. When divisions of property are discretionary, they are based upon equitable considerations, not pursuant to claims of right or entitlement.Cf. Wright v. Commissioner, supra at 391. Moreover, the section explicitly permits the divorce court to consider factors such as the parties' ages, health, abilities to support themselves, and liabilities for debt and for support of minor children in making its division. Such factors define the parties' respective needs for support, not their rights in the marital estate. The section seems to recognize implicitly that a "division of the estate" is tantamount to alimony by stating that the property award made by the court may be in lieu of, or in addition to, alimony. Wis. Stat. sec. 247.26 (1976). Furthermore, in Tonjes v. Tonjes, 24 Wis.2d 120, 125, 128 N.W.2d 446 (1964), the Wisconsin Supreme *60 Court stated "both alimony payments and a division of the estate [pursuant to section 247.26] are means whereby a husband meets the obligation to support his wife in the status to which she was accustomed." See also Anderson v. Anderson, 72 Wis.2d 631, 242 N.W.2d 165 (1976); Lacey v. Lacey, 45 Wis.2d 378, 173 N.W.2d 142 (1970). Section 71(a) covers payments which are "in the nature of or in lieu of alimony or [are] an allowance for support." Section 1.71-1(a), Income Tax Regs.
In Wright v. Commissioner, supra at 392, we reviewed Wis. Stat. sec. 247.26 (1967) generally and concluded that the section "contemplates that both alimony payments and division of the estate of the husband are means of discharging the obligation of the husband * * * to support his wife." We relied in part, on United States v. Davis, 370 U.S. 65, 70 (1962), where the Supreme Court, upon reviewing a substantively similar statutory provision, stated that: [T]he inchoate rights granted a wife in her husband's property * * * do not even remotely reach the dignity of co-ownership. * * * Her rights are not descendable, and she must survive *61 him to share in his intestate estate. Upon dissolution of the marriage she shares in the property only to such extent as the court deems "reasonable." * * * This is not to say it would be completely illogical to consider the shearing off of the wife's rights in her husband's property as a division of that property, but we believe the contrary to be the more reasonable construction. Regardless of the tags, Delaware seems only to place a burden on the husband's property rather than to make the wife a part owner thereof. In the present context the rights of succession and reasonable share do not differ significantly from the husband's obligations of support and alimony. Although Wright interpreted Wis. Stat. sec. 247.26 as it existed in 1967, amendments made to the statute between 1967 and 1976 did not change the substance of the section. Respondent agrees that the changes, which merely incorporate a list of specific factors the divorce court should consider in making a division, should not affect our decision, and petitioners do not argue otherwise. The conclusion in Wright, as supported by United States v. Davis, supra, controls our interpretation *62 of Wis. Stat. sec. 247.26 (1976). Finally, we observe that Wisconsin is a common law jurisdiction. Property acquired during a marriage is not mutually owned, as it would be in a community property state. In the stipulation and divorce decree, Mary Jo retained her separate property acquired before and during the marriage. She had property rights in nothing else. While Mary Jo may have contributed substantially as a housewife to the maintenance of the family during the course of the marriage, she has adduced no evidence indicating the value of her contributions or relating them to the monthly $ 500 payments made to her under the decree. See Schottenstein v. Commissioner, supra at 463-464; Blate v. Commissioner, 34 T.C. 121, 129 (1960). Faced with the foregoing evidence and decisions, we cannot help but conclude that Mary Jo had not basis for receiving $ 500 monthly, in addition to the $ 600 agreed to be alimony, other than her claim for support, nor did she relinquish rights of significant value, other than her claim for support, in order to receive the $ 500 payments. See also Schottenstein v. Commissioner, supra; *63 Hesse v. Commissioner, supra at 692. Therefore, we find that the $ 500 monthly payments were made "because of the marital or family relationship", and thus constitute support within the meaning of section 71. Therefore they are includible in Mary Jo's income pursuant to section 71; and are deductible by Harold pursuant to section 215. 2. Harold's Basis in the House. Shortly after the divorce, Harold sold the Wisconsin residence which he and Mary Jo had jointly owned. For purposes of determining his gain on the sale, he argues that his basis in the one-half interest that Marry Jo quitclaimed to him was equal to one-half the fair market value of the entire property. Respondent maintains that Harold's basis in Mary Jo's former interest was equal to the cash paid plus liabilities assumed. Harold disagrees, and asserts that he relinquished his marital claims against Mary Jo in exchange for her transfer of the property to him and thus, under United States v. Davis, supra, the value of the rights he gave up is to be presumed equal to the fair market value of the property he received. While Davis does stand for the general proposition *64 Harold asserts, he has introduced no evidence to show that he had marital claims against Mary Jo or that he gave up such claims in exchange for the quitclaim deed. The divorce decree and correspondence during the divorce negotiations make clear that Harold paid Mary Jo for her interest in the house with cash and the assumption of her liabilities, not with marital rights. Thus, his basis in the property acquired is equal to what he paid for it, not its fair market value at the time of exchange. Section 1012. See also Rule 142(a), Tax Court Rules of Practice and Procedure.
3.Mary Jo's Relief from Indebtedness. As mentioned above, Mary Jo quitclaimed her joint interest in the Wisconsin home to Harold. In return, he paid her $ 15,000 cash and assumed her portion of liabilities connected with the house. Mary Jo concedes that the amount she realized on the exchange equals cash received plus liabilities assumed; however, she disputes respondent's determination that she was liable on a promissory note secured by the house, and thus that she was relieved of indebtedness when Harold assumed this note. Mary Jo bears the burden of disproving respondent's determination. Rule 142(a), *65 Tax Court Rules of Practice and Procedure. She has come forth with no evidence to do so, and such evidence as is in the record supports his contentions. Because Mary Jo has not discharged her burden of proof, respondent's determination on this issue will be sustained. See Welch v. Helvering, 290 U.S. 111 (1933). Decisions will be entered under Rule 155. Footnotes
1. First, the divorce negotiation correspondence evinces Mary Jo's concern that she receive at least $ 1,000 monthly so that she could maintain her lifestyle. Such maintenance payments are in the nature of support or alimony. Second, testimony given by Harold and the parties' attorneys at the Dane County Circuit Court hearing indicates that the payments in issue were stipulated as an element of the "division of the estate" merely so that they would not terminate, as would alimony, upon Mary Jo's remarriage. See Wis. Stat. Ann. sec. 247.38 (West 1957) as revised and renumbered in Wis. Stat. Ann. sec. 767.38↩ (West 1981). 2. Probative evidence of a property settlement is the payment of a fixed principal sum, which is not subject to decrease in the event of contingencies, which is secured, and the amount of which is significantly greater than support paid during divorce negotiations. Hesse v. Commissioner, 60 T.C. 685 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834↩ (1975). Mary Jo was to receive a fixed principal sum which was not subject to contingencies. However, her receipt of the money was not secured. Furthermore, during the course of divorce negotiations, she demanded minimum monthly support of $ 1,000, which nearly equals the $ 1,100 payments she received pursuant to the divorce decree.