**294**

Joan S. SCHATTEN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 82–3021.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 20, 1983.

Joseph W. Gibbs, Nashville, Tenn., for plaintiff.

Robert E. Rice, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

In this tax refund action plaintiff seeks to recover amounts of income taxes which she alleges represents overpayments for the years 1977 and 1978. Plaintiff's insistence is that payments made to her by her former husband, Emanuel Schatten, pursuant to a decree of divorce, should be treated as division of property and therefore not taxable to her. Treasury Regulation Section 1.71–1(d)(3)(i)(b).

Plaintiff and Emanuel Schatten were married in 1954 and neither had substantial assets prior to the marriage. During the

marriage, Mr. Schatten was very successful in business matters and at the time of the divorce had acquired a net worth of between $3 and $5 million. The participation of the plaintiff in the acquisition of this net worth is disputed, but the Court finds that her contribution was almost entirely that of a wife, mother, and homemaker. Record title to all of the real estate except the home was in Mr. Schatten.

On April 2, 1973, plaintiff and Mr. Schatten entered into an "Alimony and Property Settlement Agreement" which was subsequently approved by the divorce court and incorporated into the Decree of Divorce entered on April 16, 1973. Both parties were represented by counsel in the negotiation of this agreement, and counsel for Mr. Schatten was called as a witness for the government and testified that the tax consequences of the agreement were fully discussed by counsel for both parties. The decree provides in pertinent part as follows:

1. A. Husband agrees to pay Wife the sum of four Hundred Seventy Thousand Dollars ($470,000.00), in periodic payments for her support and maintenance, in recognition of her need for support and her present outside income, and husband's income, and which shall be considered as alimony payable in periodic installments, irregardless of any remarriage of the Wife, in equal monthly installments of $2,610.00 per month over a period of 180 months. Such payments shall begin on the first day of the month following the entry of the Decree of Divorce, and upon the approval of this Property Settlement Agreement which will be incorporated in the Decree, and continuing until the full payment heretofore stated in this paragraph has been concluded.

B. It is agreed between Wife and Husband that all of such periodic payments are deductible by Husband for income tax purposes and taxable to the wife as ordinary income for income tax purposes. This obligation to the Wife shall survive the death of the Husband and shall be binding and constitute a charge upon his estate. This obligation shall likewise survive the remarriage of Wife. Husband will include a provision in his Will providing that his executor. will, upon request of the Wife, set aside with the Third National Bank in Nashville, a fund which, at an interest rate of 6%, will yield to Wife out of corpus and interest, amounts sufficient to pay any balance remaining due under the terms of this paragraph. Upon payment of same, or setting aside of such trust fund, Wife will have no claims against Husband's estate. Husband will provide to Wife, or Wife's attorney of record, a copy of Husband's Will.

C. Husband, in addition, agrees to pay for the Blue Cross and major Medical Expense policy for the Wife until she reaches the age of 65 years, but he will not liable for any and further medical bills of the Wife. This obligation ceases upon remarriage or death of Wife. These matters shall be deductible by Husband as alimony, and shall be taxable to Wife as ordinary income.

The sums paid to the wife are for her sole and separate benefit. Husband agrees that Wife shall not be monetarily liable for the care of support of their minor children, nor shall any of the above sums be used for their benefit, it being expressly understood that these payments should be the sole and separate property of the Wife, and al of such payments above shall cease at her death.

. . . . .

3. A. (1) In an effort to make a just and equitable distribution of jointly held property between Husband and Wife, and not as payment of alimony or support, the Husband shall transfer to Wife, by Quit-Claim Deed or other appropriate instrument, within thirty (30) days of the entry of the Decree of Divorce, such of his interests in the real estate located at 5618 Hillsboro Road, Nashville, Tennessee, which is presently owned by husband and Wife as tenants by the entirety and to adjust such ownership so that Wife will have a ¾ interest therein as tenant in

common, and the Husband will have a ¼ interest therein as tenant in common.

. . . . .

B. In adjustment of interests, Husband shall transfer to Wife within sixty (60) days from the date of the entry of this decree and Property Settlement Agreement ten percent (10%) of the common stock of King's Lodge, Inc., a Tennessee Corporation, which has a leasehold interest in a motel in Chattanooga, Tennessee, commonly known as the King's Lodge.

. . . . .

6. Husband shall pay the Wife the sum of $30,000.00 cash dollars immediately upon the granting of the divorce in this cause, $5,000.00 of which shall be treated as additional alimony and support for the year 1973.

Pursuant to the Agreement, plaintiff paid income tax on the payments for the years 1974, 1975, and 1976, treating the same as alimony. Furthermore, on December 15, 1977, plaintiff filed a petition for contempt in the original divorce action in which she attempted to have the defendant held in contempt for deducting amounts from her "alimony payments without prior approval." The plaintiff swore to this petition, and the same was also signed by her counsel at the time.

 It is important to observe that this is not a-case in which the Internal Revenue Service is attacking the form of transaction selected by the parties. "Where the Commissioner attacks the formal agreement the Court involved is required to examine the 'substance' and not merely the 'form' of the transaction. This is so for the very good reason that the legitimate operation of the tax laws is not to be frustrated by forced adherence to the mere form in which the parties may choose to reflect their transaction." *C.I.R. v. Danielson,* 378 F.2d 771 at 774 (3d Cir.1967). In such an examination of substance over form several factors have been developed by the courts:

(1) the intent of the parties, *Porter v. Commissioner,* 388 F.2d 670 (6th Cir.1968);

(2) whether valuable property rights were surrendered in exchange for the payments, *Schottenstein v. Commissioner,* 75 T.C. 451 (1980);

(3) whether the payments are subject to termination upon death or remarriage, *McCombs v. Commissioner,* 397 F.2d 4 (10th Cir.1968);

(4) whether the payments are secured, *Beard v. Commissioner,* 77 T.C. 1275 (1981);

(5) whether the payments equal approximately one-half of the property accumulated by the parties during marriage, *cf. Lambros v. Commissioner,* 459 F.2d 69 (6th Cir.1972);

(6) whether the need of the recipient was a factor in determining the amounts payable, *McCombs v. Commissioner, supra;* and

(7) whether there was a separate provision for support and/or division of property in the remainder of the decree or agreement, *Beard v. Commissioner, supra, Schottenstein, supra.*

If the above-established test and factors are the rules governing this case, the court makes express finding of facts contrary to the assertion of plaintiff. The intent of the parties is clearly and unambiguously set out in the Agreement. The plaintiff acknowledged this clear intent by her subsequent actions of filing tax returns and paying tax upon the amounts as alimony in 1974, 1975, and 1976, and furthermore by characterizing the payments as alimony in subsequent court pleadings which were sworn to by her. On the issue of valuable interests in property being conceded, the plaintiff would also lose under the then existing Tennessee statutes. She was not named in any of the deeds except the home, nor did she possess legal interest in any of the partnerships. The Tennessee statute in force at the time, T.C.A. 36–821, empowered the divorce court to award part or all of the husband's property as alimony *in solido.* Plaintiff also fails on the third factor. Although the Agreement provided that the payments would survive the death of her husband and her remarriage, they would cease upon her death. On the fourth factor, plaintiff also

fails. There was no security to ensure payments. On the fifth factor, the plaintiff also fails. Her total payments represented between one-sixth and one-tenth of the husband's net worth. On the sixth factor, the proof indicated that the alimony *pendente lite* paid to the plaintiff prior to the divorce was in a similar amount to the monthly payments under attack herein. Finally, as appears from the quoted portions of the Settlement Agreement above, there was a separate provision for division of property, which included an interest in the home and certain shares of stock.

Based upon the foregoing analysis, findings of fact, and conclusions of law, the plaintiff must lose and the defendant prevail. However, the parties have thoroughly briefed, argued, and the Court has considered a question of serious importance not only in this case but for similar cases that may continue to arise. While conscious of the necessary principle of judicial restraint dictating the reservation of questions not essential to the decision of a particular case, the case *sub judice* squarely presents a question not previously decided in this Circuit and which should be laid to rest for the benefit of potential litigants and instruction of the Bar. That question is, under what circumstances may one of the parties to an agreement in a divorce settlement subsequently attack the clear and unambiguous terms of that agreement in litigation with the Internal Revenue Service. Plaintiff urges the Court to adopt the rules set out in *Weiner v. Commissioner,* 61 T.C. 155 (1973), wherein the Court quoted with approval from *Edith M. Gerlach,* 55 T.C. 156, 169 (1970), and rejected the parol evidence rule of *Commissioner v. Danielson,* 378 F.2d 771 (3d Cir.1967), and the strong proof rule of *J. Leonard Schmitz,* 51 T.C. 306 (1968). In this case, the tax court essentially adopted an "open forum" approach by which it proceeds to examine the factual situation of each case and looks beyond the language of the agreement to determine the true nature of the payments.

Defendant, on the other hand, urges the adoption of the *Danielson* rule adopted by the Third Circuit: "[A] party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc." *Danielson, supra,* at 775. The *Danielson* rule has also been adopted by the Fifth Circuit in *Spector v. Commissioner,* 641 F.2d 376 (5th Cir.1981). Neither of these cases dealt with property settlements in divorce actions. However, the policy considerations which prompted the adoption of this rule in other business situations apply with equal if not greater force to the problem of divorce settlements.

When parties enter into a settlement agreement in a divorce action, and each is represented by counsel, the tax consequences of the agreement are a matter of primary concern. Litigants and competent lawyers desire to attain the highest possible degree of certainty and finality. There will always be that degree of uncertainty presented by the possibility of attack by the Internal Revenue Service on the "substance" versus "form." A different rule with respect to such attacks by the IRS is justified by the very different policy considerations applicable. The IRS must retain this discretion in order to prevent sham transactions which amount to tax evasion and abuse of the law and regulations. On the other hand, if one of the parties to an agreement entered into with full knowledge and representation of counsel, solemnized by court approval and incorporation into a divorce decree, is then permitted to collaterally attack that agreement and renounce his own characterization of the transaction, a Pandora's box of problems is opened. For instance, the amounts agreed upon in the settlement were obviously dictated in part by the tax consequences. Renunciation of the tax consequences amounts to a renunciation of the entire agreement and the subsequent court hearing the tax aspects is faced with the problem of what the parties would have agreed to under the changed circumstances. Furthermore, the "open fo-

rum" rule urged by the plaintiff in this case would invite litigation of every such settlement agreed upon, sometimes years after the original decree as in this case. The possibility of inconsistent results to the detriment of the public fisc is apparent. If Mrs. Schatten were to prevail in this case and these payments treated as a property division not subject to taxation to her, the IRS would and should promptly initiate action to deny the deduction previously taken, as well as in future years to be taken, by Mr. Schatten for these payments under Section 215 of the Revenue Code of 1954. Since Mr. Schatten was not a party to this proceeding, the judgment would not be binding upon him, and an inconsistent result could occur. Finally, the IRS would be faced with a considerable dilemma. The Commissioner would be unable to accept any divorce settlement agreement at face value. Litigation would be almost inevitable in every such case.

For all of the foregoing reasons, this Court adopts the *Danielson* rule in cases of this kind. In any attack by a taxpayer upon the characterization of "property settlement" or "alimony" incorporated into a divorce settlement agreement and subsequently approved by the divorce court, such an attack may only be entertained upon the allegation of, and then only sustained upon proof of, unenforceability because of mistake, undue influence, or fraud.

■ Plaintiff, here, argued and adduced some proof of this character. She consulted a psychiatrist prior to the divorce, was apprehensive about the divorce and the grounds Mr. Schatten might assert. However, upon consideration of all the proof, plaintiff failed to convince the Court by a preponderance of the evidence that the settlement agreement was less than her voluntary contract.

An order will enter granting judgment to the defendant and dismissing the case.