T.C. Memo. 1999-154

UNITED STATES TAX COURT

HELEN C. HOPKINSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9931-97.                          Filed May 5, 1999.

Helen C. Hopkinson, pro se.

<u>David Delduco</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined deficiencies in and
penalties on petitioner's Federal income taxes as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1993 | $7,665 | $1,533 |
| 1994 | 11,207 | 2,241 |

Unless otherwise indicated all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In the instant case, the issues we must decide are: (1) Whether amounts paid to petitioner, or on her behalf, by her former husband, Peter S. Hopkinson, and excluded by petitioner from her gross income on her income tax returns for the years in issue are includable in her gross income as alimony; and (2) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) for the years in issue.

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated for trial pursuant to Rule 91. The parties' stipulations of fact are incorporated by reference and are found as facts in the instant case.

At the time she filed the petition in the instant case, petitioner resided in Alpharetta, Georgia.

On October 31, 1992, in anticipation of divorce, petitioner and her former husband entered into a settlement agreement (settlement agreement). The relevant parts of the settlement agreement provide:

## 4.

## ALIMONY

4.01. <u>Alimony</u>.

   (a) <u>Amount</u>.  Husband shall pay to Wife as alimony for her support and maintenance the sum of Five Thousand Dollars ($5,000.00) per month commencing on December 15, 1992.  This amount shall be paid through and including December 15, 1994, at which time it shall be reduced to the sum of Four Thousand Dollars ($4,000.00) per month through and including December 14, 2002.

   *     *     *     *     *     *     *

   (c) <u>Duration</u>.  Alimony payments shall cease in the event of Wife's death, Husband's death or Wife's remarriage.

   (d) <u>Tax Treatment of Alimony Payments</u>.  Said payments shall be deductible by Husband on any federal or state tax return commencing in the year 1992, and continuing each year that alimony is paid, pursuant to Internal Revenue Code Regulations and Wife agrees and acknowledges she shall include this sum as income on any federal or state income tax return that she executes.  Both parties further agree from this time forward not to assert a position in the preparation and filing of their tax returns, whether singly or jointly with another, inconsistent with the terms and provisions of this paragraph.

   *     *     *     *     *     *     *

## 5.

## WIFE'S EDUCATION EXPENSES

5.01.  <u>Wife's Education Expenses</u>.  Husband shall pay to Wife all expenses for Wife to complete a four (4) year college degree, to include only the actual tuition, books, laboratory fees and matriculation fees, activity fees, and other fees charged by the institution selected by Wife, which is presently Oglethorpe University of Georgia in Atlanta.  He shall pay these

expenses directly to the institution or other institution she may transfer or attend, if possible, not later than five (5) days after being presented by Wife with evidence of the amount due and grades from the prior semester.  If certain expenses cannot be paid directly to the institution, and Wife pays them, then Husband shall be responsible for reimbursement of any expenses paid by Wife within ten (10) days after Wife has presented him with a canceled check or receipt evidencing her payment.  Such obligation shall not exceed the sum of Forty Four Thousand Eight Hundred Dollars ($44,800.00).  Husband's obligation shall not be terminated in the event Wife chooses to attend college on a part time basis, but will terminate after the summer quarter of 1999.  Husband's obligation shall also continue only so long as Wife maintains an average of "C" or better, as defined by the institution which she attends.  The Husband shall pay the Wife $3000.00 toward the current semester's costs contemporaneous with the execution of this Agreement.

*     *     *     *     *     *     *

## 11.

### ATTORNEYS' FEES

11.01.  Attorneys' Fees.  Husband shall pay to Wife Twenty Four Thousand dollars ($24,000.00) as attorneys fees, which is calculated in Wife's alimony payment of Five Thousand ($5,000.00) per month for two (2) years.  In addition, Husband shall pay to the Wife's attorneys the sum of $5,000.00 as non-alimony at the time this Agreement is executed, plus $3,500.00 as additional alimony on or before December 31, 1992, from any bonus he may receive.  Each party shall be responsible thereafter for payment of his or her own attorneys' fees.

On November 4, 1992, the Superior Court of DeKalb County, Georgia, entered petitioner's Final Judgment and Decree of Divorce (divorce decree) which incorporated the settlement agreement.

During 1993, the following amounts were received from or paid on petitioner's behalf by her former husband: (1) $12,000 ($1,000 per month for 12 months), as reimbursement for attorney's fees; (2) $5,201.81, to reimburse her for tuition and college expenses she paid personally; and (3) $3,520, paid as tuition to Oglethorpe University.

During 1994, the following amounts were received or paid on petitioner's behalf by her former husband: (1) $12,000 ($1,000 per month for 12 months), as reimbursement for attorney's fees; (2) $3,015.91, to reimburse her for tuition and college expenses which she paid personally; and (3) $8,678.50, paid as tuition to Oglethorpe University.

The payments described above were received directly by petitioner, or paid on her behalf, in cash or by check and were paid pursuant to the divorce decree and settlement agreement.

During the years in issue, petitioner did not live in the same household as her former husband and did not file a joint income tax return with her former husband.

On November 14, 1994, petitioner filed a Form 1040 for taxable year 1993. For the 1994 taxable year, petitioner timely filed a Form 1040.

On February 20, 1997, respondent issued two notices of deficiency determining unreported income in the amounts of $28,383 for taxable year 1993 and $45,786 for taxable year 1994.

By stipulation, respondent conceded a portion of the deficiency as determined in the statutory notice of deficiency.

The amount unreported income remaining in dispute for 1993 is $20,721.81, which includes $12,000 paid by petitioner's former husband as attorney's fees pursuant to paragraphs 4.01 and 11.01 of the settlement agreement and $8,721.81 paid by petitioner's former husband as tuition pursuant to paragraph 5.01 of the settlement agreement. The $8,721.81 tuition payment includes $3,520 paid as tuition directly to Oglethorpe University on behalf of petitioner and $5,201.81 paid to petitioner to reimburse her for tuition and college expenses she paid personally.

The amount of unreported income remaining in dispute for taxable year 1994 is $23,691.41, which includes $12,000 paid by petitioner's former husband as attorney's fees pursuant to paragraphs 4.01 and 11.01 of the settlement agreement and $11,694.41 paid as tuition pursuant to paragraph 5.01 of the settlement agreement. The $11,694.41 tuition payment includes $8,678.50 paid as tuition directly to Oglethorpe University on behalf of petitioner and $3,015.91 paid to petitioner to reimburse her for tuition and college expenses she paid personally.

Respondent further determined that petitioner was liable, pursuant to section 6662(a), for an accuracy-related penalty in

the amount of $1,533 for taxable year 1993 and $2,241 for taxable year 1994. On brief, respondent concedes that for both years in issue petitioner is only liable for the accuracy-related penalty, pursuant to section 6662(a) on the $12,000 of unreported alimony income.

OPINION

Section 71 provides in pertinent part:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) General Rule.--Gross income includes amounts received as alimony or separate maintenance payments.

(b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

(1) In general.--The term "alimony or separate maintenance payments" means any payment in cash if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

> \*     \*     \*     \*     \*     \*     \*

> (e) Exception for Joint Returns.--This section and section 215 shall not apply if the spouses make a joint return with each other.

The educational expenses paid by petitioner's former husband to petitioner and to Oglethorpe University (tuition payments) satisfy all of the requirements of section 71 for inclusion of the tuition payments in gross income: (1) The tuition payments were made by check which is a cash equivalent, see sec. 1.71-1(T)(b), Temporary Income Tax Regs., Q&A-5, 49 Fed. Reg. 34455 (Aug. 31, 1984); (2) the tuition payments were received by petitioner, or on her behalf, pursuant to paragraph 5.01 of the settlement agreement, that was incorporated into the divorce decree, see sec. 1.71-1(T)(b), Temporary Income Tax Regs., Q&A-6, 49 Fed. Reg. 34455 (Aug. 31, 1984); (3) the settlement agreement does not designate the tuition payments as amounts which are not includable in petitioner's gross income for federal tax purposes; (4) at the time the tuition payments were made, petitioner and her former husband lived in separate households; (5) the tuition payments terminate on the death of petitioner because they are

contingent on petitioner's attending school; and (6) petitioner and her former husband did not file joint returns for the taxable years in issue.

Similarly, the amounts paid to petitioner as reimbursement for attorney's fees (attorney's fees payments) satisfy the requirements of section 71 for inclusion of the attorney's fees payments in gross income: (1) The attorney's fees payments were made by cash or check; (2) the attorney's fees payments were received by petitioner pursuant to paragraphs 4.01 and 11.01 of the settlement agreement, that was incorporated into the divorce decree; (3) the settlement agreement does not designate the attorney's fees payments as amounts which are not includable in petitioner's gross income for Federal tax purposes. On the contrary, paragraph 11.01 of the settlement agreement specifically provides that the attorney's fees payments are to be part of the alimony paid to petitioner. Moreover, paragraph 4.01(d) of the settlement agreement provides that petitioner will include the payments designated as alimony in her gross income; (4) at the time the payments were made, petitioner and her former husband lived in separate households; (5) paragraph 4.01(c) of the settlement agreement provides that payment of all alimony payments ceases upon petitioner's death; and (6) petitioner and her former husband did not file joint returns for the taxable years in issue.

Petitioner argues that she properly excluded the payments in issue from her gross income because they were intended by the parties to be a property settlement and not alimony. Prior to 1985, payments were characterized as alimony or as property settlement by considering all of the surrounding facts and circumstances. See Beard v. Commissioner, 77 T.C. 1275, 1284 (1981). During 1984, Congress enacted the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 422, 99 Stat. 494, 795, effective for divorce and separation agreements entered into after December 31, 1984. The House Committee on Ways and Means, in its report on H.R. 4170, 98th Cong. 1st Sess., explained the reason for the enactment of DEFRA section 422 as follows:

> The committee believes that the present law definition of alimony is not sufficiently objective. * * * The committee believes that a uniform Federal standard should be set forth to determine what constitutes alimony for Federal tax purposes. This will make it easier for the Internal Revenue Service, the parties to a divorce, and the courts to apply the rules to the facts in any particular case and should lead to less litigation. The committee bill attempts to define alimony in a way that would conform to general notions of what type of payments constitute alimony as distinguished from property settlements * * * .

H. Rept. 98-432 (Part 2), at 1495 (1984).

The settlement agreement in the instant case was entered into after December 31, 1984. Consequently, the appropriate inquiry is not whether the payments made pursuant to the settlement agreement were alimony or property settlement based on

all the facts and circumstances. Rather, if the payments fulfill the requirements of section 71, they are to be considered alimony and must be included by the payee spouse in gross income. As we concluded above, both the tuition payments and the attorney's fees payments fulfill the requirements of section 71 for inclusion of such payments in gross income. Consequently, we hold that petitioner must include those payments in gross income for the years in issue.

Petitioner further argues that the requirements of section 71(b)(1)(D) are not met, because, pursuant to Georgia law, the payments she received from her former husband are "lump-sum" alimony and therefore the obligation to continue making payments does not cease upon petitioner's death. The Georgia Supreme Court has held that "If the words of the documents creating the obligation state the exact amount of each payment and the exact number of payments to be made without other limitations, conditions or statements of intent, the obligation is one for lump-sum alimony payable in installments." Winokur v. Winokur, 365 S.E.2d 94, 96 (Ga. 1988). The obligation to pay lump-sum alimony in installments does not terminate with the death of either party. See id. at 94.

The settlement agreement in the instant case does not state the amount or the exact number of tuition payments that petitioner's former husband is required to make. The settlement

agreement merely provides that the tuition payments cannot exceed $44,800. Moreover, petitioner's former husband's obligation to pay petitioner's tuition is subject to the condition that petitioner remain in school and maintain a "C" average. Accordingly, the tuition payments are not lump-sum alimony and Georgia law would not impose an obligation on petitioner's former husband to continue making such payments after petitioner's death. The tuition payments, therefore, satisfy all of the requirements of section 71 for inclusion of such payments in gross income.

Similarly, the payment of attorney's fees pursuant to paragraph 11.01 of the settlement agreement is not payment of lump-sum alimony. Although the settlement agreement specifies the amounts of the payments and their duration, paragraph 4.01(c) of the settlement agreement, when read in conjunction with paragraph 11.01, provides that the attorney's fees payments, because they are subsumed within the alimony payments, are subject to the condition that they terminate upon petitioner's death, petitioner's former husband's death, or on petitioner's remarriage. Accordingly, the attorney's fees payments are not lump-sum alimony, and Georgia law would not impose an obligation on petitioner's former husband to continue making such payments after petitioner's death. The attorney's fees payments,

therefore, satisfy all of the requirements of section 71 for inclusion of such payments in gross income.

Finally, petitioner argues that this Court should reform the settlement agreement so that the payments in issue would not be includable in petitioner's gross income. The Court of Appeals for the Eleventh Circuit, which is the court to which an appeal in the instant case would lie, has adopted the following rule (articulated by the Court of Appeals for the Third Circuit in Commissioner v. Danielson, 378 F.2d 771, 775 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965)):

> a party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc. * * *

See Bradley v. United States, 730 F.2d 718, 720 (11th Cir. 1984). The Court of Appeals for the Sixth Circuit, in Schatten v. United States, 746 F.2d 319, 321-322 (6th Cir. 1984), applied the Danielson rule to prevent a taxpayer from collaterally attacking the terms of a divorce settlement agreement absent a showing of mistake, undue influence, fraud, or duress.

This Court does not follow the Danielson rule, but instead allows a party to collaterally attack the terms of an agreement upon the showing of "strong proof." See Rothstein v. Commissioner, 90 T.C. 488, 495 (1988), and cases cited therein.

In Gerlach v. Commissioner, 55 T.C. 156, 169 (1970), however, we did not apply either the Danielson rule or the strong proof rule to a case involving a settlement incorporated into a divorce decree. Because Gerlach v. Commissioner, supra, arose under section 71 as in effect before the effective date of DEFRA, we looked to all of the facts and circumstances to determine whether the payments were intended by the parties to the settlement agreement to be alimony or a property settlement. See id. However, as we discussed above, after 1984, the inquiry under section 71 is whether the objective factors of section 71 are met.

Petitioner is essentially asking this Court to rewrite the settlement agreement in order to meet the requirements of section 71. Petitioner contends that reformation of the settlement agreement is appropriate because petitioner's attorney and former husband fraudulently obtained her assent to the terms of the settlement agreement. She bases her contention on the assertion that her attorney and her former husband concealed information concerning her former husband's true worth. At trial, however, petitioner did not produce any admissible evidence in the instant case to corroborate such fraud. Moreover, petitioner has not asked the Georgia courts to reform or void the settlement agreement. Rather, petitioner has pursued remedies available to her under the terms of the settlement agreement to obtain further

support and property from her former husband.  Petitioner also submitted, as attachments to her briefs, various documents relating to action she has taken against her former husband pursuant to the divorce.  Although such documents are not a part of the record, they tend to show that petitioner is pursuing relief against her former husband in the State courts, which is the proper forum for such disputes.  Under the circumstances of the instant case, petitioner has not shown that she should not be held to the clear and unambiguous provisions of the settlement agreement and their resulting income tax consequences.  As we stated above, petitioner must include the tuition and attorney's fees payments in her gross income.

Accuracy-Related Penalty

In the notice of deficiency, respondent determined that petitioner was liable for an accuracy-related penalty in the amounts of $1,533 for 1993 and $2,241 for 1994.  On brief, respondent concedes that petitioner is not liable for the portion of the accuracy-related penalty that relates to the tuition payments, made by her former husband, during the years in issue. Respondent, however, contends that petitioner is liable for an accuracy-related penalty, with respect to the deficiency from the attorney's fees payments which she excluded from income during the years in issue.

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax that is attributable to, inter alia, negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including failure to exercise due care, failure to do what a reasonable person would do under the circumstances, or failure to keep adequate books and records to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard of the Code or of the temporary and final regulations issued pursuant to the Code. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalty does not apply to any portion of an underpayment with respect to which it is shown that there was a reasonable cause and that the taxpayer acted in good faith. See sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends on all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. See id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. See id.

Based on the facts and circumstances of the instant case, we conclude that petitioner had an honest misunderstanding of the law and acted in good faith when she excluded the attorney's fees payments from her gross income. We have considered the parties' remaining arguments and find them without merit, irrelevant, or unnecessary to reach.

To reflect the foregoing, and respondent's concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.