**Joan S. SCHATTEN, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 83–5503.**

United States Court of Appeals, Sixth Circuit.

Sept. 5, 1984.

---

Joseph Gibbs (argued), Boult, Cummings, Conners & Berry, Nashville, Tenn., for plaintiff-appellant.

Robert E. Rice, Trial Atty., Bruce Ellisen (argued), Tax Div., Civil Section, U.S. Dept. of Justice, Washington, D.C., Joe B. Brown, U.S. Atty., Nashville, Tenn., Glenn L. Archer, Jr. (LEAD), Asst. Atty. Gen., Michael L. Paup, Michael J. Roach, Chief,

Before EDWARDS and CONTIE, Circuit Judges, and BALLANTINE, District Judge.[*]

PER CURIAM.

Joan Schatten appeals from a district court decision, 563 F.Supp. 294, holding that certain payments being received by Schatten from her ex-husband pursuant to a divorce settlement agreement are taxable as ordinary income. We affirm.

Emanuel and Joan Schatten were married in 1954. Although the couple had virtually no assets at the time of the marriage, Mr. Schatten's real estate business subsequently became successful. The marital estate was worth between three and five million dollars at the time of the divorce. Mrs. Schatten's primary contribution to the marital estate was that of wife, mother of three children and homemaker.

The parties cross-filed for divorce. The state court made no findings on the grounds for divorce asserted by the parties because they settled the matter on April 2, 1973. Both parties were represented by counsel during the settlement negotiations. The settlement agreement approved by the state court provided that Mr. Schatten would pay his ex-wife $470,000.00 in "support and maintenance in recognition of her need for support" over a fifteen year period. The monthly payment was set at $2,610.00. Although Mr. Schatten's duty to pay would survive his death or his ex-wife's remarriage, the obligation would cease if Mrs. Schatten died. The settlement agreement expressly provided that the payments would be ordinary income to Mrs. Schatten and deductible by Mr. Schatten.

The settlement agreement further provided that Mr. Schatten would pay his ex-

[*] The Honorable Thomas A. Ballantine, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

wife's Blue Cross and major medical insurance premiums as part of his alimony obligations. This obligation would terminate upon Mrs. Schatten's remarriage or death. The agreement stated that the premiums paid would be ordinary income to Mrs. Schatten and deductible by Mr. Schatten.[1]

A separate portion of the settlement agreement sought "to make a just and equitable distribution of jointly held property." The couple was to hold their home as tenants in common, with Mrs. Schatten holding a three-fourths share. In addition, Mr. Schatten agreed to convey ten percent of the common stock of King's Lodge, Inc., a Tennessee corporation having a leasehold interest in King's Lodge in Chattanooga.

On her 1974, 1975 and 1976 federal income tax returns, Mrs. Schatten claimed the monthly payment and insurance premium payments as ordinary income. Mrs. Schatten did not claim the payments on her 1977 and 1978 returns, however, on the ground that the payments were part of the couple's property settlement rather than part of the agreement concerning alimony. The Commissioner ruled that the payments constituted alimony taxable as ordinary income and assessed a deficiency. Mrs. Schatten then paid the tax and sued for a refund in the district court.

The district court agreed with the Commissioner and articulated alternative reasons for its holding. Following the Third Circuit's decision in *Commissioner of Internal Revenue v. Danielson*, 378 F.2d 771 (3d Cir.1967), the district court held that Mrs. Schatten could challenge the tax consequences of the language of the settlement agreement only by proving that the agreement was voidable because of mistake, undue influence, fraud or duress. The court declined to find the settlement agreement void on any of those grounds. In the alternative, the court held that if Mrs. Schatten could go beyond the terms of the settlement agreement in order to show that the payments in question were intended as a part of the property settlement

rather than as alimony, then the government would still prevail under the seven factor test enunciated by the Tax Court in *Beard v. Commissioner of Internal Revenue*, 77 T.C. 1275, 1284–85 (1981). It is from this judgment that Mrs. Schatten appeals.

■ Although alimony received by a wife is taxable as ordinary income, money received pursuant to a divorce property settlement is non-taxable. *See* 26 U.S.C. § 71(a); 26 C.F.R. § 1.71–1(b)(1) and (4). Conversely, periodic alimony payments by a husband are deductible whereas property settlement payments are non-deductible. *See* 26 U.S.C. §§ 71(c) and 215. In the present case, it is to Mrs. Schatten's advantage to have the money she is receiving characterized as being part of the property settlement rather than as alimony.

This court repeatedly has held that whether a payment is made to satisfy property rights of the wife or support duties of the husband is primarily a question of intent that will not be disturbed unless clearly erroneous. *See Crouser v. Commissioner of Internal Revenue*, 668 F.2d 239, 242 (6th Cir.1981); *Lambros v. Commissioner of Internal Revenue*, 459 F.2d 69, 72 (6th Cir.1972); *Porter v. Commissioner of Internal Revenue*, 388 F.2d 670, 671 (6th Cir.1968). What is less clear is whether a party to a divorce settlement agreement may go beyond the terms of that agreement in order to show that the intent of the parties was different than the plain language of the agreement suggests.

■ The settlement agreement at issue here plainly and unambiguously provides that both the monthly payments and the insurance premium payments are alimony taxable as ordinary income to Mrs. Schatten and are deductible by Mr. Schatten. For three reasons, we agree with the Third and Fifth Circuits that a party may not challenge the tax consequences of a settlement agreement absent "proof which in an action between the parties to the

1. Mr. Schatten is not a party to this action. The record nevertheless indicates that he has taken

the deductions provided for in the settlement agreement.

agreement would be admissible to alter the construction or to show its unenforceability because of mistake, undue influence, fraud or duress." *Danielson*, 378 F.2d at 775. *See also Spector v. Commissioner of Internal Revenue*, 641 F.2d 376, 385–86 (5th Cir.), *cert. denied*, 454 U.S. 868, 102 S.Ct. 334, 70 L.Ed.2d 171 (1981) (adopting the *Danielson* test).

First, allowing a party collaterally to attack a divorce settlement agreement years after it has been entered into would nullify the predictability of tax consequences that parties in divorce situations are seeking to achieve. *Id.* A successful collateral attack upon the settlement agreement might, for instance, spur the Commissioner to initiate proceedings against Mr. Schatten in an attempt to invalidate the § 215 deductions that the letter has been taking since 1974. If parties in Mr. Schatten's position cannot depend upon settlement agreements but instead learn that they face potentially dramatic increases in their federal income tax liabilities depending upon whether ex-spouses are successful in collaterally attacking these agreements, then such agreements will not be entered into.

Second, the tax consequences of structuring a divorce settlement agreement in a particular way obviously affect the terms of the agreement. If Mrs. Schatten is in effect permitted to alter the tax consequences that she bargained for, then she will have succeeded in unilaterally reforming the agreement to her benefit. *Id.* Third, the approach advocated by Mrs. Schatten and adopted by the Tax Court could well require the Commissioner to litigate the factual circumstances underlying countless divorce settlement agreements. *Danielson*, 378 F.2d at 775. Moreover, if it were held in some cases that a spouse, contrary to the terms of a settlement agreement, was receiving money as part of a property settlement rather than as alimony, then additional litigation might ensue between the Commissioner and the other spouse who had been taking the deductions. Although recognizing that the Tax Court has rejected the *Danielson* rule, *see, e.g., Weiner v. Commissioner of Internal Revenue*, 61 T.C. 155, 159–60 (1973), we conclude that the *Danielson* approach is sounder.

■ We also are unpersuaded by Mrs. Schatten's attempt to distinguish *Danielson* and *Spector*. She argues that the latter two cases involved arms length business transactions whereas the parties in the midst of a divorce proceeding often are emotionally distraught and are incapable of dispassionate analysis. The flaw in this argument, however, is that both Mr. and Mrs. Schatten were represented by counsel. Indeed, the plain language of the settlement agreement indicates that the tax consequences of the arrangement were thoroughly considered. Where parties to a divorce settlement agreement are represented by counsel, a party may collaterally attack the plain language of the agreement in order to obtain a tax advantage only by showing mistake, undue influence, fraud or duress.

Mrs. Schatten next argues that the settlement agreement was indeed the product of mistake, undue influence, fraud or duress. She contends that her lawyer was recommended to her by her husband, that she was physically ill and seeing a psychiatrist at the time of the divorce and that her husband had threatened the children's futures. Having reviewed the record submitted by the parties, however, we conclude that the district court did not err in rejecting this argument.

■ We further agree with the district court that the Commissioner would prevail even if the Tax Court's approach were applied. In essence, the Tax Court examines the factual situation underlying a settlement agreement to determine whether payments are part of a property settlement or are in the nature of alimony. The Tax Court has identified seven factors useful in undertaking this analysis:

1. The intent of the parties;
2. Whether valuable property rights were surrendered in exchange for the payments;

3. Whether the payments are subject to termination upon death or remarriage;

4. Whether the payments are secured;

5. Whether the payments equal approximately one-half of the property accumulated by the parties during marriage;

6. Whether the need of the recipient was a factor in determining the amounts payable; and

7. Whether there was a separate provision for support and/or division of property in the remainder of the decree or agreement.

*Beard,* 77 T.C. at 1284–85.

 Mrs. Schatten emphasizes the second factor. She argues that under Tennessee's equitable distribution method of dividing marital estates, *see Jones v. Jones,* 597 S.W.2d 886 (Tenn.1979); *Langford v. Langford,* 421 S.W.2d 632 (Tenn.1967), she could have received one-half of the marital estate as a property settlement before alimony was even considered.[2] Obtaining a three-fourths interest in the home and ten percent of the common stock in King's Lodge, Inc. did not even approach a fifty percent share of the marital property. Thus, she contends, the payments being made by Mr. Schatten must be part of the property settlement and are not alimony.

The short answer to this argument is that no court has independently adjudicated the percentage of the marital estate to which Mrs. Schatten was entitled at the time of the divorce. Moreover, no particular or minimum percentage of the marital estate must be awarded to a spouse under the equitable distribution rule. Under these circumstances, this court cannot say

that some or all of the payments being made by Mr. Schatten are part of the property settlement.

As noted by the district court, most of the other *Beard* factors favor the Commissioner's position. The language of the settlement agreement denominating the payments as alimony is the clearest indication of the parties' intent. The payments in the present case were not secured, tending to show that they were in the nature of alimony. Moreover, the settlement agreement clearly indicated that need was a factor in determining the amount payable. Finally, the agreement contained separate provisions governing support and the property settlement.[3]

The judgment of the district court is AFFIRMED.

---

**2.** A recent Tennessee case held that a wife performing the duties of mother and homemaker can be entitled to one-half of the marital estate before the issue of alimony is considered. *See Hensley v. Hensley,* 631 S.W.2d 131 (Tenn.App. 1981).

**3.** The third *Beard* factor is somewhat ambiguous. Mr. Schatten's obligation to make the monthly payments was to survive Mrs. Schatten's remarriage, a situation indicating that the

payments were part of a property settlement. Mr. Schatten's duty was to cease upon Mrs. Schatten's death, however, a situation indicating that the payments were in the nature of alimony. It should be noted, however, that no such ambiguity underlies the promise to pay the medical insurance premiums. Since this obligation was to cease upon either Mrs. Schatten's remarriage or death, these payments were in the nature of alimony.