Shirley R. GREEN,
Petitioner–Appellant (86–1897),

Larry W. and Judy Maynard,
Petitioners–Appellees
(86–1958),

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee (86–1897), Respondent–Appellant (86–1958).

Nos. 86–1897, 86–1958.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 21, 1987.

Decided Aug. 22, 1988.

John David Cole, Cole, Harned & Broderick, Scott A. Bachert (argued), Bowling Green, Ky., for petitioner-appellant.

William F. Nelson, Chief Counsel, I.R.S., Washington, D.C., Michael L. Paup (Lead

Counsel), Roger M. Olsen, Tax Div., Dept. of Justice, Richard Farber, Janet Bradley (argued), Washington, D.C., for respondent-appellee.

Philip E. Wilson (argued), Kincaid, Wilson, Schaeffer, and Hembree, Lexington, Ky., for petitioners-appellees.

Before GUY and BOGGS, Circuit Judges, and SUHRHEINRICH, District Judge.*

BOGGS, Circuit Judge.

A Kentucky court awarded a wife a lump sum of money in a divorce decree. The state court labeled the award as the wife's "share of marital property," even though it far surpassed the formerly married couple's declared net worth. The Commissioner of Internal Revenue disputed both of the former spouses' tax treatment of the award, issuing inconsistent notices of deficiencies against them.[1] Each of the taxpayers independently petitioned for review in the United States Tax Court. The Tax Court consolidated the petitions and concluded that the state court's ruling was ambiguous as to the tax status of the payment. Further, the size of the award, along with other facts, meant that the greater part of the award must have been intended for the wife's maintenance. Thus, it upheld the husband's treatment of the award as alimony deductible from his gross income and entered an order assessing a tax deficiency against the wife because she did not include the payments in her gross income.[2]

For the reasons which follow, we hold clearly erroneous the Tax Court's finding that it is ambiguous whether the award was intended to be a division of marital property or an award of maintenance. The decree expressly states that the award is a division of marital property. In light of the wife's contributions to the marriage and to her husband's education, the award is consistent with state law. Thus, we reverse and vacate the orders of the Tax Court.

## I

Shirley Green and Larry Maynard were divorced in 1975 after 17 years of marriage during which they had two children. Shirley supported the family while Larry attended medical school from 1967 to 1972 and she took out a loan to pay for his education.

Although at the time of their divorce the couple's ostensible net worth was $26,750, the Circuit Court of Simpson County, Kentucky, awarded Shirley $72,500 as her share of the marital property. In making this award, the state court stated in the decree:

> The Court has considered the entire record in its determination of marital property, and particularly the statutory requirements of KRS 403.190.[3] In determining the award of marital property to petitioner [Shirley], the Court has considered the contribution of each spouse

* The Honorable Richard Suhrheinrich, District Judge of the United States District Court for the Eastern District of Michigan, sitting by designation.

1. The Commissioner's practice of issuing inconsistent deficiency notices in order to protect the government's right to tax revenue is recognized as a valid procedure. *See, e.g., Gerardo v. Commissioner*, 552 F.2d 549, 555–56 (3d Cir.1977).

2. This case arose before the Tax Reform Act of 1986, Pub. L. 99–514, October 22, 1986, 100 Stat. 2085. Accordingly, all references are to the Internal Revenue Code of 1954 (26 U.S.C), as amended before the Tax Reform Act of 1986.

   The taxpayers relied on I.R.C. §§ 71, 215 to support their tax treatment of the payments.

3. Ky.Rev.Stat.Ann. § 403.190 (Baldwin 1983) remains unchanged since the time of the taxpayers' divorce and provides that the court shall divide the

> marital property without regard to marital misconduct in just proportions considering all relevant factors including:
>
> (a) Contribution of each spouse to the acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

to the acquisition of marital property, including the contribution of petitioner during the time she worked while respondent was in medical school and her contribution as a homemaker. The Court has considered the duration of the marriage and economic circumstances and hereby awards petitioner, Shirley Rowe Maynard, the sum of $72,500.00 as her share of the marital property.

The state court ordered that the award should draw interest at the rate of 7% per annum "until paid in full on the unpaid balance from the date of this decree, with Respondent [Larry] making monthly payments in the sum of $700.00, with the payment being applied first to accrued interest and then to principal." Larry's obligation to make the payments was not subject to any contingencies such as the death of either party or Shirley's remarriage. Larry also was required to provide sufficient surety to guarantee full payment of the award.

The state court ordered that Shirley had the right to live in the family home until she remarried or their youngest child reached age 18 in 1981. Larry was to pay the taxes, upkeep and mortgage payments due on the home and would receive a $700 credit toward the $72,500 debt for each month Shirley remained in the home. Although Larry was required to pay child support, the state court did not order an award of maintenance for Shirley.

Larry did not begin to make actual monthly payments to Shirley until 1980. He made 12 payments in 1980 and another 12 in 1981 totaling $8,400 for each year. On his tax returns for those years, he claimed that the payments were alimony and deducted the principal amount of the payments [4] from his gross income. Shirley, however, did not include the principal amount of the payments in her gross income because she considered the payments to be distributions of her marital property award. As noted, the Commissioner subse-

quently issued tax deficiencies against both Larry and Shirley.

The taxpayers petitioned the United States Tax Court in order to determine which tax treatment was correct. The Tax Court found that the divorce decree was ambiguous regarding whether the lump sum award of money to Shirley, the basis of the payments, constituted a division of marital property or an award of maintenance. The court then determined that the award was intended as both a property settlement and a maintenance award because the decree did not contain a provision for Shirley's maintenance and because the lump sum was greater than the net worth of the couple's property at the time of the divorce. Thus, the Tax Court upheld the deficiency issued against Shirley and found in favor of Larry's tax treatment of the payments.

Shirley now appeals the Tax Court's order requiring her to pay deficiencies of $1780.52 for 1980 and $2,084.54 for 1981. Although the Commissioner has filed a brief supporting Shirley's position, he also has appealed the Tax Court's decision in Larry's case in order to protect the government's interests in the event that Shirley prevails in her appeal.

The Commissioner and Shirley argue, as they did before the Tax Court, that she properly excluded the principal amounts of the payments from her gross income because the payments were nontaxable property distributions under the divorce decree. They cite this court's decision in *Schatten v. United States*, 746 F.2d 319 (6th Cir. 1984), in support of their contention that the plain language of the decree should not be subject to collateral attack since there is no indication that mistake, undue influence, fraud or duress was involved in the litigation.

Larry argues that he properly deducted the noninterest portion of the payments from his gross income as alimony. He

---

**4.** At issue is the tax treatment of the noninterest portion of the payments, $4,384 for 1980 and $4,719 for 1981. All parties agree that $4,016 of the 1980 payments and $3,681 of the 1981 payments were interest. Larry deducted those amounts as interest expense and Shirley reported them as interest income. The Commissioner does not dispute either taxpayer's treatment of the interest.

contends that the tax court was not bound by the state court's describing the entire $72,500 award as Shirley's "share of the marital property." Thus, he argues the Tax Court correctly concluded:

> that the county court decree is ambiguous and that the $72,500 award to Shirley represented a property settlement as well as a provision for maintenance,
>
> . . . .
>
> The finding by the county court that Larry and Shirley contributed equally to the acquisition of the property they owned when they were divorced indicates that Shirley was entitled to $13,375 by way of a property settlement. This sum represents 50 percent of the family's net worth. . . . [S]he received the home furnishings worth $4,000, Larry's country club membership worth $600, and her separate property with a net value of $529, as reflected in the commissioner's report, and the periodic cash payments totaling $72,500 representing a total of $77,629. Taking into account all relevant facts and circumstances, we conclude that $64,254 ($77,629–$13,375) of this total was intended as support, and that 82.8 percent ($64,254 divided by $77,629) of the cash payments (noninterest portion) each year are includable in Shirley's income under section 71 and deductible from Larry's income under section 215.

(citations omitted).

## II

■■■ Although the property interests of divorcing parties are determined by state law, federal law governs the federal income tax treatment of that property. *Bardwell v. Commissioner*, 318 F.2d 786, 789 (10th Cir.1963). "Whether particular payments represent support or property settlement is a question of intent, and the Tax Court's resolution of this question may be reversed by this Court only if clearly erroneous." *Griffith v. Commissioner*, 749 F.2d 11, 13 (6th Cir.1984).

The intended disposition of payments is not always easily discernible, however, and we therefore noted in *Griffith* that "[t]he language and structure of the decree are of great weight in determining whether the decree was intended to require payments as support or property settlement. This is particularly true when the decree is the result of a settlement agreement drafted by the parties." *Ibid.* (citations omitted).

In a case decided a few months before *Griffith*, *Schatten v. United States*, 746 F.2d 319 (6th Cir.1984), this court was asked to allow a collateral challenge to the tax consequences stemming from a divorce settlement decree. Refusing to allow the attack, we held that parties to a divorce settlement agreement which clearly states the tax consequences of the settlement award cannot later challenge those tax consequences without " 'proof which in an action between the parties to the agreement would be admissible to alter the construction or to show its unenforceability because of mistake, undue influence, fraud or duress.' " *Schatten*, 746 F.2d at 322 (quoting *Commissioner v. Danielson*, 378 F.2d 771, 775 (3d Cir.), *cert. denied*, 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967)). In reaching this conclusion, we identified three policy reasons which support precluding collateral attacks on these settlement agreements:

> First, allowing a party collaterally to attack a divorce settlement agreement years after it has been entered into would nullify the predictability of tax consequences that parties in divorce situations are seeking to achieve. . . .
>
> Second, the tax consequences of structuring a divorce settlement agreement in a particular way obviously affect the terms of the agreement. If [either party] is in effect permitted to alter the tax consequences that [they] bargained for, then [they] will have succeeded in unilaterally reforming the agreement to [their] benefit.
>
> Third, . . . [allowing the attack] could well require the Commissioner to litigate the factual circumstances underlying countless divorce settlement agreements. Moreover, if it were held in some cases that a spouse, contrary to the terms of a settlement agreement, was receiving money as part of a property settlement

rather than as alimony [for example], then additional litigation might ensue between the Commissioner and the other spouse who had been taking the deductions.

*Schatten*, 746 F.2d at 322 (citations omitted).

■ The Commissioner and Shirley argue that the same policy reasons we cited in support of the *Schatten* rule favor preventing parties to a court-ordered divorce decree from subsequently challenging the tax consequences of the decree. The Tax Court rejected this argument, as do we. The settlement agreement in *Schatten* expressly stated the tax consequences of the award in that case. Although the divorce decree here labels the award a property settlement, it is silent on the issue of how the parties are to treat the award for income tax purposes. Moreover, a court-ordered divorce decree is not the result of the kind of bargaining that enters into the negotiation of a settlement agreement. Thus, the argument that the tax consequences of the award were part of the parties' bargain does not apply.

Accordingly, we decline to adopt the position advocated by the Commissioner and Shirley, extending the *Schatten* rule to preclude a taxpayer's collateral attack on any divorce decree, whether it results from a settlement or a contested court decision. We emphasize that we are not sanctioning collateral attacks on divorce court orders. Rather, we merely conclude that *Schatten* does not control this case.

### III

■ However, reaching this conclusion does not resolve whether the Tax Court correctly found that the divorce decree was ambiguous, and whether the Tax Court then correctly determined that over 80% of the award was actually for Shirley's support and, thus, must be included in her gross income. Having considered the record, Kentucky law and the language of the divorce decree itself, we have the

" 'definite and firm conviction' " [5] that the Tax Court's finding that the intended disposition of the award is ambiguous under the divorce decree is clearly erroneous.

One reason the Tax Court reached this conclusion is because the award contained no provision for Shirley's support. Yet under Kentucky law, a court

> may grant a maintenance order for either spouse *only* if it finds that the spouse *seeking* maintenance:
>
> (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
>
> (b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Ky.Rev.Stat.Ann § 403.200(1) (Baldwin 1983) (emphasis supplied). Although the Tax Court acknowledged this standard, it ignored the fact that the state court made no such findings as well as the fact that Shirley does not appear to have sought support.

Another factor the Tax Court found indicative of an alimony award was the fact that, at least while Shirley occupied the family home, the monthly payments due on the award did not have to be made in cash but instead were credited against the award. However, as the Commissioner points out in his brief, "Section 403.-190(1)(d) of the Kentucky Revised Statutes indicates that an award of the right to live in the family home ... is marital property." Since Kentucky considers the right to live in the family home marital property, we view the fact that Larry could credit $700 for each month Shirley remained in the home against his obligation to pay $72,-500, as evidence that the lump sum award was intended to be a division of the marital property.

The Tax Court also found persuasive the fact that the award was far in excess of

**5.** *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

the net value of the couple's marital property at the time of the divorce. However, we do not consider this fact persuasive for, as we stated in dicta in *Griffith,*

> [t]he question is whether the decree provision was intended to operate as a property settlement, not whether the payments actually effectuated a division of the property owned by the parties. Even if the state courts were wrong, the evidence supports the finding that they intended to divide the property rather than impose support.

*Griffith,* 749 F.2d at 14.

One reason the state court gave for the size of its award to Shirley was that

> Petitioner [Shirley] contributed equally with respondent [Larry] in acquiring the marital property they now possess, and further that petitioner was the primary contributor during such time as respondent attended medical school, placing respondent now and in the future in a position to earn a substantial income.

The Tax Court, noting that under Kentucky law, professional degrees are not considered marital property, *Inman v. Inman,* 648 S.W.2d 847, 852 (Ky.1982), disputed the propriety of the state court's reliance on the medical degree to justify the award to Shirley. Thus, the Tax Court concluded that part of the award must have been intended for Shirley's support.

We disagree. Although Kentucky does not view professional degrees as marital property, it does consider such degrees to be assets of the marriage which may be considered when awarding maintenance, *Lovett v. Lovett,* 688 S.W.2d 329, 333 (Ky. 1985), or when dividing the marital property. *See Inman,* 648 S.W.2d at 852; *accord McGowan v. McGowan,* 663 S.W.2d 219, 223–24 (Ky.App.1983).

At the time of their divorce, Larry and Shirley possessed assets of a declared value of $177,684.[6] While it is true that, due to the amount of their liabilities, their net worth was only $26,750, nothing in Kentucky law prevented the state court from awarding Shirley a much greater share of the couple's assets in recognition of her contribution to Larry's medical degree. Similarly, nothing prevented the state court from requiring Larry to take a greater responsibility for the couple's liabilities. *See Inman,* 648 S.W.2d at 852; *McGowan,* 663 S.W.2d at 224; *accord, Van Bussum v. Van Bussum,* 728 S.W.2d 538, 539 (Ky. App.1987). Accordingly, the facts that the award to Shirley was greater than the couple's net worth and that the award was in recognition of Shirley's contribution to Larry's medical degree, do not mean that at least some part of the award must have been intended for Shirley's support.

Rather, we find the following facts strong indications that the award was intended to be a division of marital property: the monthly payments did not cease upon the death of either party, Shirley's remarriage, or a decrease in Larry's income; the payments were required to be secured by sufficient surety; and all parties agree that the installment payments included interest of 7% per annum on the lump sum award, which is completely inconsistent with an award of maintenance.

In addition to these facts, we also cannot ignore the fact that the decree expressly, consistently, and repeatedly refers to the award as "marital property," and never refers to the award as "support," "alimony," or "maintenance." We do not hold that a state court's label of a divorce award always is a binding determination of the tax treatment of the award under federal law. If the facts suggest that the parties are intentionally trying to evade their tax responsibilities, then the state court's label may be questioned. The Tax Court is then free to conduct its own examination of the circumstances which led to the award in order to determine its proper tax treatment. Yet where, as here, the state court's labeling appears to be reasonable and con-

---

6. Because it does not affect the resolution of the appeals, we accept as true the stated values of the assets and liabilities at the time of the divorce. However, we note that the validity of some of the figures in the record seems questionable and, therefore, some of the assets may have been undervalued. For example, a $99,455 bank loan is secured by property valued at only $86,000.

sistent with state law, the Tax Court should accept the label and adjudicate the tax consequences stemming from the award accordingly.

## IV

For the foregoing reasons, the decision of the Tax Court is REVERSED and its orders are VACATED. The case is remanded to that court with instructions to enter orders in both of the petitioners' cases consistent with this opinion.