Edward J. RICHARDSON, Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

Irene E. RICHARDSON, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nos. 96–3657, 96–3693.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1997.

Decided Sept. 12, 1997.

Gary L. Starkman (argued), Ross & Hardies, Chicago, IL, for Petitioner–Appellee in 96–3657.

John J. Morrison (argued), Chicago, IL, for Petitioner–Appellant in 96–3693.

Randolph L. Hutter (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, for Respondent–Appellant in 96–3657.

Ann Belanger Durney, Randolph L. Hutter (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, for Respondent–Appellee in 96–3693.

Before EASTERBROOK, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Irene Richardson failed to report as income on her 1988–90 federal income tax returns payments made to her by her husband, Edward Richardson. The Commissioner of Internal Revenue believed that she should have because, in the view of the IRS, the payments qualify as alimony or separate maintenance payments. The Commissioner sent Irene a notice of deficiency. The Commissioner also sent Edward a notice because he had deducted the payments to Irene on his 1988–90 returns; if the Commissioner turned out to be wrong and the payments were not properly classified as alimony, Edward would owe tax on them. The Tax Court agreed with the Commissioner and held that the payments made by Edward to Irene were includible in her gross income and deductible by Edward. Irene now appeals. For the following reasons, we affirm the Tax Court's judgment.

## I

## BACKGROUND

### A. *Facts*

The facts are stipulated. Edward and Irene were married in 1963. They separated in 1980 but continued to live together off and on until 1983. On March 17, 1983, they signed a separation agreement. It provided, inter alia, that Edward would pay Irene about $10,000 a month and some of her other expenses. The agreement also provided that, if Edward and Irene filed separate tax returns, Irene's payments would be includible in her gross income and deductible by Edward. In November 1987, Edward filed for divorce. In the divorce proceedings, Irene claimed that the 1983 agreement was unconscionable because it had been procured by fraud and duress.

In December 1988, Edward stopped making all payments to Irene. In January 1989, Irene filed a petition for temporary maintenance and other emergency relief. The Illinois circuit court, by orders dated October and December 1989, determined that Edward should pay Irene $29,000 per month (later the figure was revised to $26,700), retroactive to February 1, 1989. On December 4, 1990, the circuit court entered a judgment of dissolution of marriage and found that the 1983 separation agreement was valid. In September 1992, the Appellate Court of Illinois reversed the latter judgment; it determined that the separation agreement was "procedurally and substantively unconscionable." *In re Marriage of Richardson*, 237 Ill.App.3d 1067, 179 Ill.Dec. 224, 232, 606 N.E.2d 56, 68 (1992).

Edward and Irene filed joint federal income tax returns from 1980 through 1987. By a letter dated April 10, 1989, Edward informed Irene that he would be filing his 1988 tax return as a married person filing separately. Irene received this letter on April 14, 1989. She did not timely file her 1988 return, nor did she request an extension. Rather, she finally filed her 1988 return in October 1990. For taxable years

1988, 1989 and 1990, Edward and Irene filed separate returns. On her tax returns, Irene did not include in her gross income the payments that Edward had made to her. Edward, on the other hand, deducted them as alimony payments. The Commissioner sent a notice of deficiency to Edward stating that the payments to Irene were not deductible and a notice of deficiency to Irene stating that the payments were taxable income to her.[1]

### B. *Decision of the Tax Court*

#### 1. Payments made in 1988

The Tax Court held that the payments Edward made in 1988 were pursuant to a "written separation agreement" under the version of I.R.C. § 71(a)(2) in effect at the time of the making of the 1983 agreement. Under § 71(a)(2), because the payments were made pursuant to such an agreement, they were included in Irene's gross income. The court held that it was immaterial that the agreement was later held invalid by the Illinois appellate court. Treasury Regulation § 1.711(b)(2)(i) provides that "payments are includible in the wife's gross income whether or not the agreement is a legally enforceable instrument." Therefore, the court held, Irene's gross income included Edward's payments to her, and Edward could deduct them under I.R.C. § 215.

#### 2. Payments made in 1989 and 1990

In these years, Edward made payments pursuant to the state court opinion and order. The version of § 71 in effect at the time of the court's order provides that a payment qualifies as an "alimony or separate maintenance payment" if, inter alia, "the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income." I.R.C. § 71(b)(1)(B). Because the Illinois court did not expressly "designate" that the court-ordered payments were tax-free to Irene, the Tax Court held, they were includible in

---

1. The Commissioner sent inconsistent notices to protect the government's right to tax revenue. This practice has been recognized as valid. *See* *Green v. Commissioner,* 855 F.2d 289, 290 n. 1 (6th Cir.1988); *Gerardo v. Commissioner,* 552 F.2d 549, 555 (3d Cir.1977).

Irene's gross income and deductible by Edward.

### 3. Additions to Irene's tax

The Commissioner determined that Irene was liable for an addition to tax under I.R.C. § 6651(a) for failing to file a timely return in 1988. The Tax Court held that Irene did not show her failure was due to "reasonable cause" and that she therefore was liable for the addition. The court found further that Irene was liable for an addition to tax under § 6661(a) for a substantial understatement of tax for taxable year 1988. Irene was also found liable for accuracy-related penalties under § 6662 for substantial understatements of tax in 1989 and 1990. Section 6664(c) states that these penalties shall not be imposed if the taxpayer had a reasonable cause for the understatement and acted in good faith. Irene claimed reasonable cause insofar as she relied on the state court order. The Tax Court held that her reliance was unreasonable because the order did not rule on whether the payments were taxable to Irene. Moreover, in the Tax Court's view, Irene did not present sufficient evidence to support her claim that she filed her returns based on the advice of a competent tax professional. Accordingly, the court held that Irene was liable for the addition to tax under § 6661 for 1988 and the penalties under § 6662 for 1989 and 1990. Conversely, because the court had determined it proper for Edward to have deducted the payments he made to Irene, it ruled that Edward was liable for no penalties insofar as he had accurately reported his income for the years in question.

## II

## DISCUSSION

### A. *The 1988 Payments*

■ The relevant portion of § 71 effective in 1983 when the Richardsons entered into their separation agreement provides:

> If a wife is separated from her husband and there is a written separation agreement ..., the wife's gross income includes periodic payments ... received after such agreement is executed which are made under such agreement and because of the marital or family relationship.... This paragraph shall not apply if the husband and wife make a single return jointly.

I.R.C. § 71(a)(2) (1982). Irene insists that the payments made to her by Edward in 1988 were not made under "a written separation agreement." She bases this contention on the fact that the Appellate Court of Illinois held in *In re Marriage of Richardson*, 237 Ill.App.3d 1067, 179 Ill.Dec. 224, 606 N.E.2d 56 (1992), that her 1983 separation agreement with Edward was unconscionable.

The relevant treasury regulation provides that payments made pursuant to a written separation agreement "are includible in the wife's gross income whether or not the agreement is a legally enforceable instrument." Treas. Reg. § 1.711(b)(2)(i). Irene submits, without support, that the regulation does not apply to fraudulent agreements. We believe, however, that the better reading of the regulation is that Irene must pay tax on the money she received under the 1983 agreement, notwithstanding that the agreement was later declared unconscionable. The general rule is that a contract unenforceable under state law can still be a valid "written separation agreement" for purposes of the *Tax Code. Taylor v. Campbell*, 335 F.2d 841, 845–46 (5th Cir.1964). On its face, the regulation applies regardless of the reason that a particular agreement may be deemed unenforceable. State laws governing fraud, unconscionability and duress are simply different ways to prove that an agreement is legally unenforceable. The purpose of the statute and the regulation is uniformity of tax consequences notwithstanding variations in state law. *Id.* The regulation and the statute it interprets are aimed at uniform results, a goal that would be thwarted by making tax consequences under § 71 turn on the states' various laws governing contract enforceability. We suspect that the states' laws with respect to fraud, duress and unconscionability are as varied as their laws are with respect to other contractual defenses. There is no basis for creating an exception to the general rule for cases in which the separation agreement is found to be unenforcea-

ble because of unconscionability, duress or fraud.

Irene notes that the cases cited by the Commissioner and the Tax Court do not involve fraudulent agreements. She notes further that the Sixth Circuit stated in *Schatten v. United States*, 746 F.2d 319 (6th Cir. 1984), that, "[w]here parties to a divorce settlement agreement are represented by counsel, a party may collaterally attack the plain language of the agreement in order to obtain a tax advantage only by showing mistake, undue influence, fraud or duress." *Id.* at 322. *Schatten*, however, involved a different issue; the former wife there wanted the payments she received by her husband to be classified as property settlement payments, despite the fact that the settlement agreement expressly provided that the payments would be treated as ordinary income to her. Unlike Irene, Joan Schatten was trying to alter the construction of her otherwise valid agreement. The court in *Schatten* held that she could not attack the plain language of the agreement absent fraud or the like. The court, citing cases dealing with covenants not to compete, did not mention the effect of the treasury regulation; and the issue with which we are confronted was not before it.[2]

■ The logic of Irene's argument would write Treasury Regulation § 1.71–1 out of the books. She says that a fraudulent agreement is no agreement at all and that, as a result, payments under such an agreement cannot be taxed. Yet the same could be said for all "unenforceable" agreements, and the regulation states clearly that payments made under separation agreements shall be included in gross income even if the agreement is legally unenforceable. Irene wants us to hold that somehow fraud, duress and unconscionability are different; however, courts then would have the problem of deciding which state contract defenses are not covered by the regulation and why. The regulation makes no such distinctions, and we generally

defer to treasury regulations if they are reasonable, *Goulding v. United States*, 957 F.2d 1420, 1423 (7th Cir.1992). Given the regulation here, we see no justification for distinguishing the basis upon which Irene's agreement was declared unenforceable from the other contract defenses which are clearly covered by the regulation.

We hasten to add, as a member of this panel noted at oral argument, that Irene is not claiming fraud in the factum. (Nor is she claiming that Edward secretly gave her money without her knowledge or forced her to take it.) The Illinois appellate court did not find, for example, that Edward had obtained her signature on the settlement agreement by tricking her into thinking that she was actually signing another document. *See generally* 1 E. Allan Farnsworth, Farnsworth on Contracts § 4.10, at 402–04 (1990) (discussing differences between fraud in the factum and fraud in the inducement). Such a case, as counsel for the Commissioner conceded at oral argument, may present a more difficult problem. Here, of course, the basic problem with the settlement agreement was not that there was fraud in the execution; rather, the agreement did not award Irene enough money, *see In re Marriage of Richardson*, 237 Ill.App.3d 1067, 179 Ill.Dec. 224, 233–37, 606 N.E.2d 56, 65–69 (1992). Yet Irene knowingly received the money, and she knew the reason Edward was paying was because he was contractually committed to do so. True, the Illinois court eventually ruled that Irene should have been given more; but it makes no sense to hold, on the basis of that ruling, that she does not have to pay federal income tax on the money she knowingly received under the 1983 agreement. Given that the regulation requires tax to be paid on payments received under separation agreements, even if unenforceable, Irene's payments fall within the general tax principle that people have to pay tax on all income received, including alimony pay-

---

**2.** In support of her position, Irene also cites *Heath v. Commissioner*, 40 T.C.M. (CCH) 889, 1980 WL 4140 (1980), a case in which the Commissioner conceded that, if the separation agreement had been signed under duress or because of fraudulent misrepresentations, the payments would not constitute taxable alimony. Because

the Commissioner conceded that a fraudulent agreement would not produce taxable alimony payments, the court considered only whether there was fraud and held that there was none. The case is not controlling and did not pass on the issue before us.

ments. Conversely, under I.R.C. § 215, the 1988 payments were deductible by Edward; therefore, he is not liable for any additional tax or penalties.

## B. *The 1989 and 1990 Payments*

■ Section 71, as amended, governs the payments made to Irene in 1989 and 1990 pursuant to the 1989 Illinois circuit court's opinion and order. *See* I.R.C. § 71(b). Under that version of § 71, the payments made pursuant to a divorce or separation instrument qualify as "alimony or separate maintenance payments" if, inter alia, "the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215." I.R.C. § 71(b)(1)(B).

The dispositive question in this case is whether the Illinois decree "designates" Irene's payments as not includible in her gross income.[3] Irene insists that the state court's opinion can be read as implicitly designating her payments as nontaxable. First, she notes, the state court determined Irene's monthly payments by analyzing an affidavit she had submitted that estimated her monthly expenses. Her affidavit did not list federal taxes as an expense, so when the court awarded her a monthly amount to cover her expenses, it did not include an amount to cover federal tax liability on her payments. Also, Irene contends, the state court opinion analyzes Edward's net (after-tax) income to determine whether $29,000 per month would be a reasonable amount to require Edward to pay. The state court estimated that the ordered payments would constitute roughly 40% of Edward's after-tax income. From these portions of the state court opinion Irene infers that the opinion contemplates that Edward will have already paid tax on the money to be paid to Irene. As a result, in Irene's view, the state court opinion "effectively" designates that her payments shall not be includible in her gross income and shall not be deductible by Edward.

The Commissioner rejoins that, although the state court made a rough calculation of Edward's aftertax income, it did so only after arriving at a monthly amount for Irene and only for the purpose of showing that the payments were reasonable relative to Edward's income. The Commissioner also urges that it is irrelevant that Irene did not ask the state court for an amount to cover her federal tax liability. Indeed, the Commissioner asserts, the only reason the court did not order an amount to pay federal taxes is that Irene did not ask for such an amount in her affidavit. At any rate, submits the Commissioner, § 71 applies unless the court decree designates that the payments are not includible in gross income; the state court opinion here does not so designate.

■ We agree with the Commissioner. In common usage, the term designate means "to make known directly." Webster's Third New International Dictionary Unabridged 612 (1981); *see also* Black's Law Dictionary 447 (6th ed. 1990) ("To mark out and make known; to point out; to name; indicate."). For a legal instrument to make known directly that a spouse's payments are not to be treated as income, we believe that the instrument must contain a clear, explicit and express direction to that effect. The legal instrument in this case does not expressly state one way or the other what the tax treatment of Irene's payments will be. Irene may be correct that the state court was under the misimpression that Irene was not going to have to pay tax on the payments it ordered Edward to make. As she notes, the state court determined Irene's expenses by reference to Irene's affidavit, which did not list federal income taxes as an expense. Also, the court did discuss Edward's after-tax income in such a way that one could argue that the court assumed Irene's payments were coming out of Edward's after-tax income. However, state court assumptions aside, the statute says that the payments are to be included in Irene's income if the state court order does not "designate" otherwise. Even if the state court made some (mistaken)

---

3. Surprisingly, the Commissioner has not promulgated any regulations describing what a divorce or separation instrument must say, or what

a divorce court must do, to "designate" the tax treatment to be afforded inter-spousal payments.

assumptions, it is clear to us that the court did not designate in any way that the payments were not deductible by Edward and not includible by Irene.[4] Although we can imagine cases in which the question whether an instrument's designation of tax treatment is explicit enough for the purposes of the Tax Code, we have no difficulty holding that the instrument here does not designate anything with respect to whether the payments were to be included in Irene's income. Stated simply, a designation requires more than we have in this case. To set the bar as low as Irene proposes would create the unnecessary difficulty of courts having to pick apart a state court order to determine (or make inferences about) what assumptions the state court was laboring under. The relative ease of administration in requiring explicit direction confirms our belief that the word "designate" in § 71(b)(1)(B) must be given its plain commonsense meaning. Because the order in this case does not designate that the payments to Irene be tax-free, they are included in her gross income as alimony or separate maintenance payments under I.R.C. § 71. Conversely, the Tax Court was correct to decide that Edward could deduct the 1989 and 1990 payments under I.R.C. § 215 and that he is not liable for any understatement penalty for those years.

## C. Additions to Tax

### 1. 1988

■ Irene did not file her 1988 tax return until October 1990, a year and a half late. As a result, the Commissioner determined that Irene was liable for an addition to tax under I.R.C. § 6651. Section 6651 imposes an addition for the failure to file a timely return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." I.R.C. § 6651(a)(1). Irene contends that she has shown reasonable cause, noting that Edward belatedly informed her

that he was filing separately on April 14, 1989. That same letter, though, explained to Irene that she had received payments under the 1983 separation agreement that "may have a tax impact upon your federal income tax and state income tax liability." Ex.5–E. Yet Irene never asked for an automatic four-month extension to file. See I.R.C. § 6081(a); Treas. Reg. § 1.6081–4. Indeed, she did not file a return until a year and a half later, even though the separation agreement stated that, if Edward filed separately, she would have to pay tax on her payments. Nor was it reasonable for Irene not to file simply because she was challenging the validity of the settlement agreement at the time. We have already held that the agreement's invalidity did not affect her tax liability. Further, the agreement was not even declared unconscionable until 1992. In *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), Chief Justice Burger, writing for the Court, explained that, to escape the § 6651 penalty, the taxpayer bears a "heavy burden" of showing that he or she "exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'" *Id.* at 245–46, 105 S.Ct. at 689–90 (quoting Treas. Reg. § 301.6651(c)(1) (1984) and holding that the failure to file a timely return is not excused by taxpayer's reliance on agent); see Treas. Reg. § 301.6651–1(c). Irene has not met her "heavy burden" of demonstrating that she exercised ordinary business care and prudence but was unable to file a timely 1988 tax return.

■ The Commissioner also determined that Irene was liable under I.R.C. § 6661(a) (repealed) for an addition to tax for substantially understating the amount of income tax she owed for taxable year 1988. Subsection (c) of § 6661 authorizes the Commissioner to waive the addition if the taxpayer shows that there was reasonable cause for the under-

---

4. We note, as we did at oral argument, that the Commissioner could assist greatly the state divorce courts and bar in this regard through some type of form on which the state court could, for instance, check a box designating whether ordered payments are to be included in the spouse's income. It is entirely within the power of the Commissioner to eliminate the problem

posed by this case, a problem that assuredly must arise frequently in the divorce courts around this Nation. A simple form would save future litigants, the Commissioner, the state courts and this court from having to invest needless resources and time into continuing to struggle with the common tax problem posed by Irene's case.

statement and that he or she acted in good faith. *See* I.R.C. § 6661(c); Treas. Reg. § 1.6661–6(b). Whether to waive the § 6661 addition is a matter left to the discretion of the Commissioner. *Accardo v. Commissioner*, 942 F.2d 444, 454 (7th Cir.1991), *cert. denied*, 503 U.S. 907, 112 S.Ct. 1266, 117 L.Ed.2d 494 (1992); *Illes v. Commissioner*, 982 F.2d 163, 167 (6th Cir.1992) (per curiam), *cert. denied*, 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993); *Heasley v. Commissioner*, 902 F.2d 380, 385 (5th Cir.1990). We have already held that Irene did not show reasonable cause for failing to file a timely 1988 return. For the same reasons, we affirm the Tax Court's decision that Irene failed to demonstrate a reasonable cause for reporting that she owed no tax for 1988.

2. 1989 and 1990

■ The Commissioner imposed accuracy-related penalties on Irene under I.R.C. § 6662 for substantial understatements of income tax in 1989 and 1990. (She reported that she owed no tax for those years.) Section 6662 imposes a penalty for such an understatement in "an amount equal to 20 percent of the portion of the underpayment to which this section applies." I.R.C. § 6662(a). Section 6664 tempers this penalty provision by providing that "[n]o penalty shall be imposed under this part [which includes § 6662] with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." I.R.C. § 6664(c)(1). The Tax Court held that Irene failed to demonstrate a reasonable cause for understating her income. The Tax Court ruled that, because the state court had not designated whether her payments were to be included in gross income, any reliance on the state court opinion to believe that her payments were tax-free was unreasonable. The Tax Court also held that Irene failed to present sufficient evidence to support her claim that she had relied on the advice of a competent tax professional.

On appeal, Irene repeats her contention that the state court ordered her payments be made out of Edward's after-tax income, so that it was reasonable for her not to claim any income. She notes further that she was not schooled in tax matters and that she had consulted an accounting firm, Duggan and Associates, Ltd., in preparing her tax returns. The Commissioner responds that no reasonable reading of the state court opinion could lead one to conclude that the payments were not to be included in Irene's income. Further, the Commissioner notes, Irene has a college degree in neurobiology from Northwestern University and has had significant experience in the family business; she worked as a bookkeeper and handled accounts payable. The Commissioner notes that, other than the fact that a tax preparer signed her returns, there is no evidence in the record that Irene received any advice from professionals. The Commissioner insists that Irene has not satisfied her "heavy burden" of proving reasonable cause. *Boyle*, 469 U.S. at 245, 105 S.Ct. at 689–90.

One benchmark spoken of in *Boyle* is that to escape a tax penalty the taxpayer must demonstrate that he or she demonstrated "ordinary business care and prudence." 469 U.S. at 246, 251, 105 S.Ct. at 690, 692–93. *Boyle* involved § 6651, but the elucidation of the term "reasonable cause" provided there by Chief Justice Burger translates well into our situation. Irene has failed to demonstrate such care and prudence and has failed to show a reasonable cause for understating her income tax. Whether there was a reasonable cause is a fact-intensive inquiry. *See* Treas. Reg. § 1.6664–4(b). Here, the facts are such that the Tax Court's determination ought not be disturbed. The state court order did not designate that Irene's payments were not includible in her gross income. Moreover, the record shows, Irene is an educated person who understands business matters. Irene claims that she relied on expert advice, which can constitute reasonable cause under *Boyle*, 469 U.S. at 251, 105 S.Ct. at 692–93, if the advice went to the existence of tax liability as opposed to when tax returns are due. But Irene has presented no evidence of the professional advice, if any, that she received. *See* Treas. Reg. § 1.6664–4(b) ("[T]he most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability."). The

record shows· only that her returns were signed by a tax preparer. There is no evidence that a professional, after being informed of the circumstances, advised her that she did not have taxable income in the relevant years. In her reply brief, Irene states ambiguously that "she consulted with a tax accountant regarding the preparation of her tax returns. (The tax accountant obviously concluded that these payments were not taxable to Irene.)" Reply Br. at 10. An unsupported assertion in a parenthetical at the end of a reply brief without any citation to the record cannot carry Irene's burden. The Tax Court decided that she did not provide sufficient evidence to prove that she had received any informed professional advice. We agree and have no basis to disturb that court's finding. Accordingly, Irene did not show reasonable cause for understating her income tax; the record amply supports that she did not exercise ordinary business care and prudence in managing her tax affairs.

## Conclusion

For the foregoing reasons, we affirm the judgment of the United States Tax Court.

AFFIRMED.