T.C. Memo. 1998-378


UNITED STATES TAX COURT


ALEXANDRA M. MEDLIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BURLEY M. MEDLIN AND MARY K. MEDLIN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 12512-97, 13180-97.     Filed October 19, 1998.


Robert E. Lee, for petitioner in docket No. 12512-97.

E.G. Allen III, for petitioners in docket No. 13180-97.

William Henck, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:  These consolidated cases were submitted pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

Respondent determined a deficiency in petitioner Alexandra M. Medlin's (Alexandra) Federal income tax for 1994 in the amount of $1,946.  Respondent also determined a deficiency in petitioners Burley M. Medlin's (Burley) and Mary K. Medlin's (Mary) Federal income tax for 1994 in the amount of $2,170.

After concessions,[2] the issue remaining for decision is whether the amounts in issue are properly characterized as alimony or separate maintenance payments within the meaning of section 71(b).

These cases were submitted fully stipulated under Rule 122. The stipulations of fact and attached exhibits are incorporated herein by this reference.  Alexandra resided in Charlottesville, Virginia, and Burley and Mary resided in Williamsburg, Virginia,

---

[1]    Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]    The parties agree that Burley's direct reimbursement of $784 for Alexandra's medical expenses which were not covered by her medical insurance constitutes alimony or separate maintenance payments.  As Alexandra points out on brief, she overstated the amount of such payments on her 1994 original and amended returns by $19 ($803 - $784).

on the dates their respective petitions were filed in these cases.

Burley and Alexandra were married on June 20, 1959. They separated on or about October 14, 1987. They entered into a property settlement agreement (the Agreement) on April 5, 1988, which fixed the amount to be paid by Burley to Alexandra for her support and maintenance and fixed their respective rights to their marital property. The pertinent provisions of the Agreement are as follows:

1. <u>SUPPORT AND MAINTENANCE OF THE WIFE</u>.

The Husband shall pay to the Wife as and for her alimony, maintenance and support, the sum of $1,600.00 per month, payable on the 1st day of each and every month, beginning on the 1st day of the month following the execution of this Agreement, to continue thereafter until the death of either party, or the Wife's remarriage, whichever shall first occur.

The parties further acknowledge and agree that all payments made by the Husband to the Wife pursuant to this paragraph shall be fully taxable as income to the Wife and reportable by her on all of her federal and state income tax returns, and deductible by the Husband from income as reported by him on all of his federal and state income tax returns.

\*          \*          \*          \*          \*          \*

3. <u>PERSONAL PROPERTY</u>.

The parties make the following division and settlement of their personal property.

\*          \*          \*          \*          \*          \*

g. <u>Automobile</u>

The husband shall provide the Wife with a new Lincoln Town Car each and every year,

and in addition provide for all maintenance on said automobile including, repairs, insurance, gas, oil and license, for so long as he is a Lincoln-Mercury dealer, until the death of either party or until the Wife's remarriage, whichever shall first occur. In the event the Husband is no longer a Lincoln-Mercury dealer, than he shall provide the Wife with a new Grand Marquis class car each and every year, and in addition provide for all maintenance on said automobile including, repairs, insurance, gas, oil and license; in the event the Husband is no longer an automobile dealer, he agrees to provide the Wife with a new Grand Marquis class car every two years and further agrees to provide for all maintenance on said automobile including, repairs, insurance, gas, oil and license.

\*  \*  \*  \*  \*  \*

6. <u>MEDICAL INSURANCE</u>.

The Husband agrees to maintain the Wife as beneficiary of his present (or comparable) medical/hospitalization/dental policy until the death of either party or the Wife's remarriage, whichever shall first occur. If said coverage can no longer be provided through Medlin Motor Company or any dealership or business owned by the Husband, then, in such event, the Husband shall obtain comparable coverage through a private carrier. The parties agree to share equally the cost of any medical, dental or psychiatric expenses of the Wife not covered by said insurance. The Husband's obligation to pay premiums shall not exceed the standard market premiums for an insured of the Wife's age for the coverage described above.

Burley and Alexandra were divorced in 1988. Burley married Mary sometime thereafter but prior to the end of 1994.

<u>Monthly Payments</u>

Burley paid Alexandra $19,200 pursuant to paragraph "1" of the Agreement during 1994. Alexandra reported this amount as alimony received on her original and amended 1994 returns.

Burley and Mary claimed an alimony paid deduction for this amount on their 1994 return.  Although their treatment of this amount as alimony is not in dispute, the proper characterization of amounts paid for an automobile and related expenses and for medical insurance premiums remains in issue.

Automobile and Related Expenses

During 1994, Burley's wholly owned corporation, Medlin Motor Co., Inc. (the dealership), paid for the lease of an automobile from Ford Motor Credit Corporation (FMCC).  Burley provided the automobile to Alexandra for her use during 1994.  Alexandra did not sign the lease with FMCC.

The dealership paid for the insurance on the automobile.  It also provided Alexandra with a dealership credit card which was used exclusively for charging gas and other maintenance expenses for the automobile.  The dealership paid for these credit card charges.  It issued Burley a Form 1099-DIV for 1994 which reflected that he had received a constructive dividend in the amount of $4,952, the total cost of the lease, insurance, and credit card charges paid by the dealership during 1994.

Alexandra did not report the $4,952 as alimony received on her original and amended 1994 returns.  Burley and Mary claimed an alimony paid deduction for this amount on their 1994 return. In the statutory notices of deficiency, respondent, as a stakeholder in this case, included the $4,952 in Alexandra's

income as alimony received and disallowed Burley's and Mary's claimed deduction.

Medical Insurance Premiums

Alexandra was covered under the dealership's medical insurance policy until 1992 or 1993, when the insurance carrier informed the dealership that she no longer qualified as an insured because she was not its employee. During 1994, Alexandra and Burley arranged for the dealership to reimburse Alexandra for the cost of the premiums for the medical insurance which she had obtained through her employer. This arrangement was the least costly alternative for providing medical insurance for Alexandra. The dealership issued Burley a Form 1099-DIV for 1994 which reflected that he had received a constructive dividend in the amount of $1,998, the total of the medical insurance premiums reimbursed by the dealership during 1994.

Alexandra reported the $1,998 as alimony received on her 1994 original return. She later filed her amended return for 1994 on which she omitted $1,999.[3] Burley and Mary claimed an alimony paid deduction in the amount of $1,998 on their 1994 return. In the statutory notices of deficiency, respondent included the $1,998 in Alexandra's income as alimony received and disallowed Burley's and Mary's claimed deduction.

---

[3] This amount represented the previously reported medical insurance premiums. Alexandra agrees that the correct amount of the medical insurance premiums in issue is $1,998.

Section 61 defines gross income to mean all income from whatever source derived, including alimony or separate maintenance payments.  Sec. 61(a)(8).  Whether a payment constitutes alimony or separate maintenance within the meaning of section 61(a)(8) is determined by reference to section 71.

Section 71(a) generally provides that gross income includes amounts received as alimony or separate maintenance payments. Section 71(b)(1) defines the term "alimony or separate maintenance payment" as any payment in cash if--

        (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

        (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

        (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

        (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Section 215 allows an individual, in computing adjusted gross income, to deduct an amount equal to alimony or separate maintenance paid during such individual's taxable year if such amount is includable in the gross income of the recipient under section 71.  Accordingly, if the amounts in issue fail to meet any of the requirements of section 71(b)(1), such amounts are not

alimony and are thus not includable in Alexandra's gross income or deductible by Burley and Mary.  The parties do not dispute that the requirements of section 71(b)(1)(C) and (D) have been satisfied with respect to the amounts in issue.

Section 71(b)(1)

The initial requirement under this section is that the payments must be in cash.  Sec. 71(b)(1).  Section 1.71-1T(b), Q&A 5, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984), explains that only cash payments, including checks and money orders payable on demand, qualify as alimony or separate maintenance payments.  Transfers of services or property, execution of a debt instrument by the payor, or the use of property of the payor do not qualify.  Id.

We are satisfied that the dealership's cash payments for the lease, insurance, and maintenance of the automobile for Alexandra's benefit and for the reimbursement of Alexandra's medical insurance premiums are properly treated as cash payments made by Burley during 1994.  He included these amounts in income as constructive dividends and is entitled to any allowable deductions for the amounts paid.

Section 71(b)(1)(A)

We next examine whether the cash payments treated as made by Burley satisfy section 71(b)(1)(A).  Section 1.71-1T(b), Q&A6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984), provides that a payment of cash by the payor spouse to a third

party on behalf of the payee spouse pursuant to the terms of the divorce or separation instrument qualifies as alimony or a separate maintenance payment.

Burley argues that the only logical way for him to satisfy the obligations in issue was by making cash payments to third parties. Respondent agrees that the Agreement "necessarily authorized cash payments to third parties to effect its provisions." Alexandra argues that the pertinent provisions of the Agreement do not expressly provide for Burley to make any cash payments to her or on her behalf.

Clearly, the cash payments in issue meet the conditions under which cash payments to a third party may satisfy section 71(b)(1)(A). First, we find that the cash payments were made "under" the Agreement. Burley would not have caused the dealership to make the cash payments but for the terms of the Agreement. Second, we find that the cash payments were made "on behalf of" Alexandra because they were made with respect to property and services used solely by Alexandra. Third, we find that the cash payments were not made to maintain property owned by Burley. He had no ownership interest in the leased automobile or in the medical insurance policy. Cf. sec. 1.71-1T(b), Q&A6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).

Section 71(b)(1)(B)

Alexandra argues that the payments made with respect to the automobile do not satisfy section 71(b)(1)(B) because the parties

implicitly designated such payments as part of their property settlement and not alimony.  She suggests that the designation of the monthly payments under paragraph "1" of the Agreement as alimony combined with the lack of any designation for the automobile-related payments under subparagraph "g" of paragraph "3" implies that such payments were designated as not being alimony.

Section 71(b)(1)(B), however, only treats a payment as other than alimony if the governing divorce or separation instrument designates the payment as a "payment which is not includible in gross income under * * * [section 71] and not allowable as a deduction under section 215."  The regulations do not provide for and we do not interpret this statutory language to allow designations by implication as Alexandra contends.  Richardson v. Commissioner, 125 F.3d 551, 557 (7th Cir. 1997), affg. T.C. Memo. 1995-554; see sec. 1.71-1T(b), Q&A8, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).

We hold that the amounts in issue constitute alimony or separate maintenance payments which must be included in Alexandra's gross income and are deductible by Burley and Mary.

To reflect the foregoing,

Decisions will be entered under Rule 155.