**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1779
_____

ROVAKAT, LLC, A Partnership, Shant S. Hovnanian, Tax Matters Partner,
Appellant

v.

COMMISSIONER OF INTERNAL REVENUE
_____

On Appeal from the United States Tax Court
(Docket No. 3251-09)
United States Tax Court Judge: Honorable David Laro
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 25, 2012

Before:   HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*

(Opinion Filed:  June 17, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Rovakat, LLC, a partnership for tax purposes, by its tax matters partner, Shant S.

Hovnanian, appeals the December 21, 2011 decision of the United States Tax Court that

substantially upheld notices of Final Partnership Administrative Adjustments ("FPAAs")

issued by the Commissioner of Internal Revenue (the "Commissioner") for tax years

2002, 2003, and 2004. The FPAAs, in pertinent part, disallowed more than $5 million in losses that Rovakat claimed from a "distressed asset/debt" ("DAD") tax shelter, and imposed accuracy-related penalties under §6662(h) of the Internal Revenue Code, 26 U.S.C. § 6662(h). Having carefully considered the Tax Court opinion, the record, and the parties' contentions, we will affirm.

I.

The parties are completely familiar with the complex transactions that provide the context for this dispute, and we will not recount here the facts that are so comprehensively presented in the Tax Court opinion. Instead, for purposes of our decision, the following summary of the parties' transactions suffices:

> 1. On June 7, 2001, Credicom Asia redeemed its worthless class A common stock from its parent corporation, Credicom NV ("CNV"), for 1,718,116 Swiss francs and $303,375. CNV's claimed "basis" in the class A common stock, i.e., the amount it had invested in Credicom Asia's class A common stock, approximated $184,000,000.

> 2. The next day, CNV transferred the 1,718,116 Swiss francs and $303,375 to International Capital Partners, LP ("ICP"), in exchange for a partnership interest in ICP.[1]

> 3. On November 6, 2002, ICP transferred 50,000 of the Swiss francs, having a fair market value of $34,185, to Rovakat in exchange for a partnership interest in Rovakat.

---

[1] ICP was a Cayman Islands limited partnership and founding partner of Rovakat. ICP was controlled by Lance O. Valdez, a tax attorney and financial advisor who put together DAD tax shelters. Valdez was also president of Credicom Asia, and directed the transactions that formed the basis for the DAD tax shelter at issue in this case.

4.  On December 26, 2002, ICP transferred 90% of its partnership interest in Rovakat to Mr. Hovnanian for $30,776.[2]

5.  On December 27, 2002, Rovakat sold the 50,000 Swiss francs to a third party for their fair market value of $35,468.[3]

6.  Rovakat incurred almost $400,000 in costs related to these transactions, including fees of more than $380,000 to Valdez, and $13,000 for a tax opinion from a law firm recommended by Valdez.

7.  On its tax returns for 2002, 2003, and 2004, Rovakat claimed that its basis in the 50,000 Swiss francs was $5,805,000, so that its transfer of the Swiss francs for $35,468 generated a loss of more than $5,700,000.[4]

In FPAAs issued for Rovakat's 2002, 2003, and 2004 tax returns, the

Commissioner determined that Rovakat had not established the claimed basis of

$5,805,000 in the 50,000 Swiss francs, and thus was not entitled to deductions from

---

[2] Mr. Hovnanian has a degree in economics from the University of Pennsylvania, and is a sophisticated investor as well as an entrepreneur in the information technology and medical devices fields.

[3] The Tax Court opinion was inconsistent with regard to the fair market value of the Swiss francs. The Tax Court first stated that the francs were valued at $35,268, (App. 21), but later stated that they were valued at $35,468 (App. 30.) We use the latter number—$35,468—which is the value the parties stipulated to before the Tax Court. (Supplemental App. 52.)

[4] As a general rule, property received in exchange for a partnership interest assumes the basis of the partner's interest in the property. *See* 26 U.S.C. § 721(a). In this case, Rovakat treated Credicom Asia as a partnership and CNV as one of its partners, notwithstanding their corporate structures. Asserting that CNV liquidated its partnership interest in Credicom Asia for "property" in the form of Swiss francs, Rovakat claimed that CNV's basis in the class A common stock, totaling approximately $184,000,000, attached to the Swiss francs. Rovakat claims a pro rata share of the purported basis in the Swiss francs.

3

ordinary income for the purported "loss" incurred when the Swiss francs were sold for $35,468. The Commissioner found in the alternative that the deductions should be disallowed because the Swiss francs transaction lacked economic substance. The Commissioner's FPAAs also imposed a 40% gross valuation misstatement penalty pursuant to 26 U.S.C. § 6662(h)(1) with respect to tax underpayments resulting from the wrongfully claimed losses attributed to the Swiss francs transaction.

Rovakat challenged the disallowances for the deductions attributed to the Swiss francs transaction in the Tax Court. In rejecting Rovakat's challenges, the Tax Court applied the "substance-over-form" doctrine, and found that Credicom Asia's redemption of its class A stock from CNV, a corporation, could not be regarded as a transfer of a partnership interest. Consequently, CNV's basis in the class A stock did not attach to the Swiss francs received by CNV in exchange for the class A stock. Alternatively, the Tax Court held that Rovakat could not claim a basis of more than $5,800,000 in Swiss francs having a market value of only approximately $35,000 because the transactions at issue lacked "sufficient economic substance to be respected for federal tax purposes." (App. 47.) Specifically, the Tax Court found that "[t]he francs transaction as a whole, when viewed in the light of its individual steps, had no economic significance other than to serve as a means for Mr. Hovnanian's attempt to purchase and use CNV's built-in-loss." (*Id.* at 48.) Observing that "[b]ecause a transaction that lacks economic substance is not recognized for Federal tax purposes, and 'cannot be the basis for a deductible loss,'" the Tax Court ruled that Rovakat could not claim losses from that transaction. (*Id.* at 64.) Finally, the Tax Court sustained the 40% accuracy-related penalties, rejecting Rovakat's

4

assertion that it had acted in good faith and with reasonable cause on the basis of opinions from tax attorneys.

## II.

Rovakat timely appealed the Tax Court decision, challenging the disallowances for the losses it attributed to the Swiss francs transaction as well as the 40% accuracy-related penalties.[5] The Tax Court had jurisdiction over this matter pursuant to 26 U.S.C. §§ 6226(f) and 7442. We have jurisdiction pursuant to 26 U.S.C. § 7482.

### A. The Disallowance of the Claimed Loss

"[W]hile we conduct plenary review of the Tax Court's legal conclusions, we review its factual findings, including its ultimate finding as to the economic substance of a transaction, for clear error." *ACM P'ship v. Comm'r*, 157 F.3d 231, 245 (3d Cir. 1998). In this case, the Tax Court characterized the initial transaction in the series of transactions that culminated with Rovakat's sale of Swiss francs, *i.e.*, the redemption of Credicom Asia stock from CNV for Swiss francs and $303,375, to be a sale of common stock as opposed to a transfer of partnership interests as asserted by Rovakat. It is firmly established that the substance of a transaction, and not its form, governs its tax treatment. *See Comm'r v. Court Holding Co.*, 324 U.S. 331, 334 (1945) ("The incidence of taxation depends upon the substance of a transaction."). The Tax Court had ample justification for characterizing the redemption of Credicom Asia's stock from its parent, CNV, as a

---

[5] The Tax Court also sustained other adjustments made by the Commissioner in the FPAAs as well as the Commissioner's 20% accuracy related penalty attributable to the underpayment of taxes resulting from the other adjustments to income and deductions made by the Commissioner in the FPAAs. Rovakat does not challenge on appeal these aspects of the Tax Court's decision.

5

sale. In this regard, it is irrefutable that both CNV and Credicom Asia were corporations.

Because CNV could not have transferred a partnership interest in exchange for dollars

and Swiss francs, it could not carry over its basis in Credicom Asia class A stock to the

Swiss francs that ultimately were transferred to Rovakat and sold for $35,468. For this

and all the other reasons articulated by the Tax Court in its exceedingly thorough opinion,

the Tax Court did not err in rejecting the more than $5 million loss claimed by Rovakat.[6]

## B.

We review the Tax Court's findings with respect to the assessment of accuracy-

related penalties for clear error. *See Stobie Creek Invs. LLC v. United States*, 608 F.3d

1366, 1381 (Fed. Cir. 2010). In this case, there is no dispute that Rovakat asserted a basis

in the Swiss francs that exceeded 400% of the correct amount, triggering a 40% penalty

for a "gross valuation misstatement[]." *See* 26 U.S.C. § 6662(h). Rovakat could avoid

[6] Although we need not reach the alternative ground articulated by the Tax Court for sustaining the disallowance of the claimed loss—the Swiss francs transaction lacked economic substance—we note that we discern no error in the Tax Court's application of the economic substance doctrine as explicated in *ACM Partnership*. Under this doctrine, "a transaction that is 'devoid of economic substance' must be disregarded for tax purposes and 'cannot be the basis for a deductible loss.'" *ACM P'ship*, 157 F.3d at 247 (quoting *Lerman v. Comm'r*, 939 F.2d 44, 45 (3d Cir. 1991)). The Tax Court faithfully adhered to the requirements that both the "'objective economic substance of the transactions' and the 'subjective business motivation' behind them" be examined. *Id.* (quoting *Casebeer v. Comm'r*, 909 F.2d 1360, 1363 (9th Cir. 1990)). Its findings on both prongs of the inquiry are well supported. For example, on the objective component, the Tax Court properly considered that the nearly $400,000 in fees paid by Rovakat to obtain Swiss francs having a value of approximately $35,000 did not make economic sense independent of claiming a loss premised upon an artificially inflated basis in the Swiss francs. As to the subjective component, the Tax Court likewise had substantial reasons for finding that "the economic reality of the francs transaction is not consistent with a bona fide profit objective." (App. 64.) The Tax Court's correct application of the "economic substance" doctrine provides an alternative basis for sustaining the disallowance of the claimed loss.

the penalty only by demonstrating both reasonable cause for its gross misstatement and good faith. 26 U.S.C. § 6664(c)(1). Rovakat asserts that it satisfied its "heavy burden" of showing reasonable cause, *Richardson v. Comm'r*, 125 F.3d 551, 557 (7th Cir. 1997), because it had relied upon opinions issued by law firms regarding the transaction. The Tax Court rejected Rovakat's argument because one opinion was obtained from a law firm recommended to Rovakat by Valdez, the person that promoted and profited from the transaction, and the other opinion was not given to Rovakat's partner on tax matters, Mr. Hovnanian, until years after the transactions were consummated. Moreover, both opinions were found to be based upon unsupported assumptions. Given these factual findings, we discern no error in the Tax Court's conclusions that Rovakat lacked reasonable cause and did not act in good faith. Accordingly, Rovakat cannot avoid the gross misstatement penalties.

III.

Consistent with the foregoing and for substantially the same reasons articulated by the Tax Court in its comprehensive opinion, we will affirm the Tax Court's December 21, 2011 decision in this case.